**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN DIVISION**

| | |
|---|---|
| NATALIE CAMPAGNA and, GLORIA DEVAULT, AMANDA FARMER, PHILIP PAGLIARO, and YAAKOV ROZINER, on behalf of themselves and all others similarly ____) situated, | ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) Case No. 1:20-cv-18533-JHR-AMD ) CIVIL ACTION |
| v. | ) ) FILE NO. _____ |
| TD BANK, N.A., | ) ) **JURY TRIAL DEMANDED** |
| Defendant. | ) ) |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Natalie Campagna and, Gloria DeVault, Amanda Farmer, Philip Pagliaro, and Yaakov Roziner, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), on behalf of themselves and the classes of persons preliminarily defined below, bring this Amended Class Action Complaint against Defendant TD Bank, N.A. ("TD" or "TD Bank") as follows:

**INTRODUCTION**

1.      This is a civil action seeking monetary damages from TD Bank arising from its improper business practices in connection with consumer credit card accounts.

2.      For consumers who need to build or rebuild their credit score, TD Bank offers a secured credit card.

3.      A secured credit card is a credit card that requires a security deposit which is held as collateral in a savings account. The deposit in the savings account "secures" the credit line for the card. The issuer of the credit card essentially has no risk because funds are available in the savings account up to the amount of the credit limit on the card.

4.     A consumer who applies for, and is issued, a TD secured credit card is also required to open a TD Simple Savings Account to hold their security deposit.

5.     Once approved for the secured credit card, the consumer has 15 days to deposit funds in their TD Simple Savings account.

6.     The funds in the TD Simple Savings account are frozen and cannot be accessed by the consumer while the secured credit card account is open.

7.     In its contractual document, and the promotional webpage that incorporates the contractual document, TD Bank informs consumers that, if they use and maintain their secured credit card and keep it in good standing for seven consecutive billing cycles, they can "graduate" to an unsecured TD Bank Credit Card.  Graduating to an unsecured TD Bank Credit Card allows consumers to regain control of the funds in the TD Simple Savings account that had previously been held as security.  In accordance with TD Bank's terms, shifting to an unsecured card also entitles consumers to a prorated refund of the annual fee that they were charged for having a secured credit card.  Other benefits of moving from a secured to an unsecured account include a boost to the consumer's credit score after the change is reported to the credit reporting agencies by TD.

8.     In reality, however, TD Bank refuses to allow consumers to graduate to an unsecured TD Bank Credit Card even when they keep their secured credit card in good standing for the requisite seven consecutive billing cycles.

9.     By doing so, TD violates the terms set forth in TD's contractual documents.  TD Bank's conduct also results in TD continuing to exercise control over the collateral funds in the TD Simple Savings account and its refusal to refund the annual fee paid by consumers for the secured credit card.  TD Bank's scheme robs consumers of several of the benefits of the bargain.

2

This practice also gives TD Bank an unfair advantage over competitors, which do not promise to upgrade accounts in seven months, and therefore lose business to TD.

**PARTIES**

10.     Plaintiff Natalie Campagna is a citizen of the State of New York.  Ms. Campagna has contracted with TD Bank for a "TD Cash VISA Secured Card."

11.     Plaintiff Gloria DeVault is a citizen of the State of New Jersey.  Ms. DeVault has contracted with TD Bank for a "TD Cash VISA Secured Card."

12.     Plaintiff Amanda Farmer is a citizen of the State of South Carolina.  Ms. DeVaultFarmer has contracted with TD Bank for a "TD Cash VISA Secured Card."

**Formatted:** Font: Times New Roman

13.     Plaintiff Philip Pagliaro is a citizen of the State of Connecticut.  Mr. Pagliaro has contracted with TD Bank for a "TD Cash VISA Secured Card."

11.14. Plaintiff Yaakov Roziner is a citizen of the State of New York.  Mr. Roziner has also contracted with TD Bank for a "TD Cash VISA Secured Card."

12.15. Defendant TD Bank is headquartered in Cherry Hill, New Jersey.   TD has approximately 1,300 branches and 1,900 ATM machines in the United States.  By assets, TD Bank is now ranked in the top 10 among U.S. banks and provides banking services to 6,500,000 east coast customers from Maine to Florida.

13.16.  TD Bank has 242 branches in New Jersey and provides banking services to over 12% of the state's bank customers.

**JURISDICTION AND VENUE**

14.17. This Court has jurisdiction over the subject matter presented by this Amended Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), which explicitly provides for the original jurisdiction of the federal courts of any class action in which any member of the class is a citizen of a state different from any

defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000, exclusive of interest and costs.

~~15.~~18.  Plaintiffs allege that the total claims of members of the proposed class in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6).  Plaintiffs are citizens of the New York ~~and,~~ New Jersey, South Carolina, and Connecticut, whereas Defendant is a citizen of New Jersey for purposes of diversity.  The proposed class will include consumers from dozens of states.  Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).  Furthermore, ~~Plaintiffs allege that more than two-thirds of all~~most of the members of the proposed class ~~in the aggregate~~ are citizens of a state other than New Jersey, where this action is being filed, and ~~that~~ the total number of members of the proposed class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

~~16.~~19.  Venue is proper in the District of New Jersey pursuant to the facts described above which include the presence of the TD Bank headquarters, hundreds of bank branches, and hundreds of thousands of customers in this District.

**COMMON FACTUAL ALLEGATIONS**

~~17.~~20.  Secured credit cards like the one held by Plaintiffs are governed by the Card Agreement, which is a ten-page form contract drafted by TD Bank.

~~18.~~21.  The Card Agreement has a specific paragraph that governs eligibility for an unsecured credit card.  *See* Card Agreement, p. ~~2.~~2 (Exhibit 1 hereto).

~~19.~~22.  Section 3(C) "Eligibility for an Unsecured Card" explicitly states: "If you use and maintain a Credit Card Account for 7 consecutive Billing Cycles without committing an act of default pursuant to the Agreement, you may be eligible to graduate to an unsecured TD Bank credit card automatically."  *Id.*  This is the only eligibility requirement contained in the Card

4

Agreement regarding graduating to an unsecured credit card.

20.23.  This section of the Card Agreement also states: "Your account will automatically be reviewed [for graduation] once you meet the threshold eligibility requirements."

21.24.  Therefore, TD represents to consumers that, after seven months, their account will automatically be reviewed and, if they have not defaulted, their account will graduate to an unsecured credit card.

22.25.  The Card Agreement also provides that upon graduation, "your saving account that secured the credit card will be released so you will have access to these funds."

23.26.  Further, the Card Agreement promises: "Upon graduation, a prorated refund of the annual fee will be given to you and it will appear on a subsequent monthly statement." *Id.*

24.27.  If an account has not been kept in good standing for seven consecutive months, then TD promises to "automatically" review the account "on an ongoing basis thereafter to determine if you have become eligible." *Id.* Thus, if the customer later completes seven months in a row will no default, TD should "automatically" graduate the account. Indeed, the Card Agreement states "you will be notified of the impending ***automatic*** graduation." *Id.* (emphasis added).

25.28.  In addition to the Card Agreement, TD Bank has a promotional page on its website that states that a consumer can graduate to an unsecured credit card if their account is kept in good standing and then directs the consumer to the Card Agreement, which, as noted above, contains the seven-month requirement. *See* TD Cash Secured Credit Card (Exhibit 2 hereto) (available at: https://www.td.com/us/en/personal-banking/credit-cards/secured-credit-card/) (last visited March 26, 2020).

**A.      Natalie Campagna**

26.29.  In the summer of 2019, Ms. Campagna began investigating secured credit cards

that included a defined graduation period.

27.30.  A secured credit card with a defined graduation period was important to Ms. Campagna, because she ultimately wanted to transition to an unsecured credit card.

28.31.  During her online searches, Ms. Campagna was unable to find any other banks that were as specific as TD was about the timing and requirements to graduate from a secured credit card to an unsecured credit card.  Only TD Bank promised that a customer was eligible for the upgraded account after seven months in good standing.

29.32.  For example, even though Ms. Campagna was approved for a secured credit card through Citibank, the graduation policy associated with that card was quite vague, so Ms. Campagna elected to obtain a secured credit card with TD.

30.33.  In reliance upon the representations made by TD Bank in the Card Agreement regarding being able to automatically graduate to an unsecured credit card following seven consecutive billing cycles in good standing, Ms. Campagna went into her local TD Bank branch and applied in person for a Cash Secured Credit Card.

31.34.  After being approved for the secured card, Ms. Campagna deposited $2,000 into a TD Bank Simple Savings account to be used as collateral for the credit card.

32.35.  Ms. Campagna began using her secured card in August 2019.

33.36.  On September 13, 2019, TD Bank assessed Ms. Campagna an annual fee of $29.00 for the secured card.

34.37.  Ms. Campagna used and maintained her account in good standing for seven consecutive billing cycles.

35.38.  In March 2020, Ms. Campagna contacted TD Bank via telephone to inquire about her graduation to an unsecured credit card as described in the Card Agreement.

36.39.  TD Bank's "customer service specialist" informed Ms. Campagna that she would

6

**not** be graduating to an unsecured credit card.

37.40. The specialist also told Ms. Campagna that "she didn't know why the agreement is still on the web site" because the process of graduating to an unsecured credit card is not undertaken after seven months and the process takes into account many factors which are not included in the form contract.

38.41. The specialist also advised Ms. Campagna that consumers are "always calling in" and requesting graduation to an unsecured card pursuant to the seven-month promise, but that the process takes far longer than seven months and "hardly anyone ever graduates due to the lengthy process involving many outside factors."

39.42. As a result of TD Bank's refusal to graduate Ms. Campagna to an unsecured credit card, Ms. Campagna did not receive her prorated refund of the annual fee that she paid and has not regained use of the $2,000 that she was required to deposit into her TD Bank Simple Savings account as collateral.

40.43. TD Bank contradicted the Card Agreement by refusing to consider and grant Ms. Campagna's request after she complied with the terms.

**B.    Gloria DeVault**

41.44. In 2018, Ms. DeVault began investigating secured credit cards as a way of improving her credit.

42.45. Ms. DeVault was attracted to TD Bank's secured credit card program because of the specific timing requirements to graduate from a secured credit card to an unsecured credit card.

43.46. In reliance upon TD Bank's promise that a customer was eligible for to be upgraded from a secured credit card to an unsecured credit card after seven months in good standing, Ms. DeVault opened her secured credit card in October 2018.

7

44.47.  After maintaining her secured credit card in good standing for over seven months, Ms. DeVault contacted TD Bank about graduating to an unsecured credit card.

45.48.  The customer service representative stated that Ms. DeVault did not qualify to graduate to a secured credit card and recommended that Ms. DeVault try to open an unsecured card and request a larger line of credit.

46.49.  Ms. DeVault explained that the recommended strategy was not what TD Bank had represented to her when she signed up for the card and that she had been assured that, if she made all her payments on time, she would graduate to the unsecured card and have ~~your~~her security deposit refunded.

47.50.  Many months later, after incurring an annual fee in November 2019 and continuing to keep her account in good standing, Ms. DeVault again contacted TD Bank about graduating to an unsecured credit card.

48.51.  TD Bank's customer service representative again advised Ms. DeVault that she should forget about graduating and simply try to apply for an unsecured credit card directly.

49.52.  Once again, Ms. DeVault explained that she should not have to do that because the program she signed up for stated she would graduate to an unsecured credit card after keeping her account in good standing and ~~then~~that her security deposit would then be released.

50.53.  Ms. DeVault explained that she had an impeccable record with TD Bank and requested ~~that~~ to speak with someone else about graduating the card as promised.

51.54.  TD Bank's customer service representative refused to allow Ms. DeVault to speak with anyone else.

52.55.  Since being denied graduation a second time, Ms. DeVault continues to keep her account in good standing and continues to incur additional fees from TD Bank, including yet another annual fee.

8

**C.    Amanda Farmer**

56.    In the spring of 2018, Ms. Farmer began investigating secured credit cards as a way of improving her credit.

57.    In reliance upon TD Bank's promise that a customer would be eligible for an upgrade to an unsecured credit card from a secured credit card after seven months in good standing, Ms. Farmer opened her secured credit card in April 2018.

58.    After being approved for the secured card, Ms. Farmer deposited $1,000 into a TD Bank Simple Savings account to be used as collateral for the credit card.

59.    Ms. Farmer has used and kept her secured credit card in good standing for more than two years without graduating to an unsecured card.[1]

**Formatted:** Font: Times New Roman

60.    TD Bank assesses Ms. Farmer an annual fee of $29 for having her secured credit card every April.

61.    On numerous occasions over the past three years, Ms. Farmer has contacted TD Bank about graduating to an unsecured credit card.

62.    Despite the fact that Ms. Farmer maintained her secured credit card in good standing for periods of time much longer than seven months, each time Ms. Farmer contacts TD Bank about graduating to an unsecured credit card, she is told by a "customer service specialist" that she does not qualify to graduate.

63.    Despite TD Bank's refusal to graduate Ms. Farmer in violation of the Card Agreement, Ms. Farmer continues to keep her account in good standing and continues to incur additional fees from TD Bank.  Another annual fee is scheduled to be assessed in April 2021.

---

[1] On one occasion in the last two years, Ms. Farmer exceeded her credit limit of $1,000 by $3.16 due to TD's assessment of a $27.00 late payment fee on her account.  That fee was later reversed due to bank error, meaning her account never should have exceeded the credit limit.  Regardless, Ms. Farmer's account was in good standing for over seven months prior to TD's mistake and has been in good standing for 13 consecutive months since then without being graduated.

**D.    Philip Pagliaro**

64.    In late 2016, Mr. Pagliaro began investigating secured credit cards as a way of improving his credit.

65.    In reliance upon TD Bank's promise that a customer was eligible for to be upgraded from a secured credit card to an unsecured credit card after seven months in good standing, Mr. Pagliaro opened his secured credit card in December 2016.

66.    After being approved for the secured card, Mr. Pagliaro deposited $500 into a TD Bank Simple Savings account to be used as collateral for the credit card.

67.    Mr. Pagliaro has used and maintained his secured credit card for over four years.

68.    TD Bank assesses Mr. Pagliaro an annual fee of $29 every December.

69.    On numerous occasions over the past four years, Mr. Pagliaro has contacted TD Bank about graduating to an unsecured credit card.

70.    Despite the fact that Mr. Pagliaro maintained his secured credit card in good standing for periods of time much longer than seven months, each time Mr. Pagliaro contacts TD Bank about graduating to an unsecured credit card, he is told by a "customer service specialist" that he does not qualify to graduate.

71.    Despite TD Bank's refusal to graduate Mr. Pagliaro in violation of the Card Agreement, Mr. Pagliaro continues to keep his account in good standing and continues to incur additional fees from TD Bank, including yet another annual fee that was assessed on December 18, 2020.

**E.    Yaakov Roziner**

72.    In the spring of 2019, Mr. Roziner began investigating secured credit cards as a way of improving his credit.

73.    In reliance upon TD Bank's promise that a customer was eligible to be upgraded from a secured credit card to an unsecured credit card after seven months in good standing, Mr.

10

Roziner applied for his secured credit card in March 2019.

74.     After being approved for the secured card, Mr. Roziner deposited $4,000 into a TD Bank Simple Savings account to be used as collateral.

75.     Mr. Roziner has used and maintained his account in good standing since opening the secured credit card.

76.     In the summer of 2020, Mr. Roziner contacted TD Bank via telephone to inquire about his graduation to an unsecured credit card as described in the Card Agreement.

77.     TD Bank's "customer service specialist" informed Mr. Roziner that he would not be graduating to an unsecured credit card, but that he should wait and check back later.

78.     Recently, Mr. Roziner contacted TD Bank again to inquire about graduating to an unsecured credit card.

79.     TD Bank's "customer service specialist" informed him that he would not be graduating to an unsecured credit card because he had a late payment – which was a complete falsehood.

80.     TD Bank's "customer service specialist" also informed Mr. Roziner that he would never be re-evaluated for promotion to an unsecured credit card again.

81.     Despite TD Bank's refusal to graduate Mr. Roziner in violation of the Card Agreement, Mr. Roziner continues to keep his account in good standing, continues to incur additional fees from TD Bank, and continues to be denied use of the $4,000 collateral he deposited when he opened his account.

53.82.     TD's handling of Plaintiffs'Ms. Campagna's and Ms. DeVault's accounts are not isolated events.  Many customers regularly call TD to make the same request that Plaintiffs made.  All of these requests are based on the same promise by TD.  Of course, based on the Card Agreement, the process should be automatic and customers should not even need to call TD.

11

~~54.~~83.  This practice is not new.  As suggested by the TD ~~employee~~employees, the Bank has continued this practice for some time.  For example, a similar complaint was lodged online against TD Bank regarding the same practice in 2014.

~~55.~~84.  A customer known as "@taxi818" commented that he applied for a secured credit card from TD Bank in November 2013.  During the application process, this consumer was advised that he could graduate to a secured card after six months of use.

~~56.~~85.  After the sixth month, @taxi818 called to speak with TD Bank's customer service specialists and was told that the review period for promotion to an unsecured account took place after **two years** rather than what was stated in the contract.

~~57.~~86.  Even though TD Bank's Card Agreement clearly establishes that a consumer can graduate to an unsecured credit card following seven consecutive billing cycles, further investigation has revealed that TD Bank adheres to ~~this~~at least a two-year waiting period.

~~58.~~87.  This two-year waiting period is spelled out in a much less prominent location on the Bank's website.  This webpage invites consumers who *already* have a TD Secured Credit Card to apply for an unsecured credit card and informs them as follows:

> Upon receipt of your application, we will review your TD Secured Credit Card account to ensure it has been open and in good standing for at least 24 consecutive billing cycles.  We will then review your application in its entirety to determine your creditworthiness in accordance with our standard procedures for review of unsecured personal credit card applications, including, but not limited to, obtaining a credit report to determine your eligibility.

*See* You May Be Eligible for a TD Unsecured Credit Card (Exhibit 3 hereto) (available at: https://www.tdbank.com/personalcreditcard/unsecured-credit-card.html) (last visited March 26, 2020).

~~59.~~88.  Because this webpage is aimed at consumers who already have TD Secured Credit Cards, but want to apply for an unsecured credit card, it is not geared toward those applying for the card initially.

12

60.89.  The few procedures mentioned on this webpage are dramatically different than the criteria set forth in the Card Agreement for graduation to an unsecured credit card.  For example, the Card Agreement only mentions a seven-month waiting period, not the two-year waiting period.  *Compare* Exhibit 1, p. 2, *with* Exhibit 3.  Likewise, the Card Agreement makes no mention of a credit report needing to be pulled to make a determination as does the webpage.  *Id.*  TD's own documents reveal a classic bait-and-switch scheme.

61.90.  This separate online document, however, cannot trump the Card Agreement, which states that the Card Agreement "replaces any other agreement relating to your Credit Card Account that you and we made earlier or at the same time" and further provides that the Card Agreement controls over any other document unless expressly provided otherwise.  *See* Card Agreement, p. 8.

62.91.  In sum, Plaintiffs' experiences with TD Bank are not isolated, but rather are illustrative of TD's improper business practices.

## CLASS ACTION ALLEGATIONS

63.92.  Plaintiffs bring this action individually and on behalf of all others similarly situated pursuant to Rule 23.  The Classes are preliminarily defined as:

**The National Class**

All holders of a TD Bank, N.A. Cash Secured Credit Card who, within the applicable statute of limitations preceding the filing of this lawsuit, maintained their account for seven consecutive billing cycles without committing an act of default and were not timely graduated to an unsecured TD Bank credit card.

**The New York Subclass**

All New York citizens who are holders of a TD Bank, N.A. Cash Secured Credit Card and who, within the applicable statute of limitations preceding the filing of this lawsuit, maintained their account for seven consecutive billing cycles without committing an act of default and were not timely graduated to an unsecured TD Bank credit card.

13

**The New Jersey Subclass**

All New Jersey citizens who are holders of a TD Bank, N.A. Cash Secured Credit Card and who, within the applicable statute of limitations preceding the filing of this lawsuit, maintained their account for seven consecutive billing cycles without committing an act of default and were not timely graduated to an unsecured TD Bank credit card.

**The Connecticut Subclass**

All Connecticut citizens who are holders of a TD Bank, N.A. Cash Secured Credit Card and who, within the applicable statute of limitations preceding the filing of this lawsuit, maintained their account for seven consecutive billing cycles without committing an act of default and were not timely graduated to an unsecured TD Bank credit card.

**Formatted:** Normal, Justified, Indent: Left: 0.5", Don't add space between paragraphs of the same style, No widow/orphan control

64.93.  Excluded from the Classes are:

a.    Defendant and any entities in which Defendant has a controlling interest;

b.    Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

c.    All current employees of Defendant;

d.    The judges to whom this case is assigned and any member of the judges' immediate family and any other judicial officer assigned to this case;

e.    Any attorneys representing Plaintiffs or the Classes; and

f.    All governmental entities.

65.94.  Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes and/or to add classes or subclasses if necessary before the Court determines whether certification is appropriate and as the Court may otherwise allow.

66.95.  The Classes will face common questions such that there is a well-defined community of interest among the members of the Classes.  These questions predominate over questions that may affect only individual class members because TD Bank has acted on grounds generally applicable to the Classes.  Such common legal or factual questions include, but are not limited to:

14

a.      Whether TD Bank improperly refused to consider graduation of consumers who held secured credit cards to unsecured credit cards;

b.      Whether TD Bank breaches the Card Agreement by failing to consider graduating consumers who held secured credit cards to unsecured credit cards after their seventh consecutive billing cycle in good standing;

c.      Whether TD Bank engages in unfair and/or deceptive trade practices in violation of New York ~~and/or,~~ New Jersey ~~Law~~, or Connecticut law by engaging in the trade practices alleged herein; and/or

d.      Whether Plaintiffs and other members of the Classes have been damaged as a result of TD Bank's wrongful business practices described herein.

~~67.~~96.  The parties are numerous such that joinder of them all is impracticable.  Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to TD's records.  TD Bank has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiffs.

~~68.~~97.  It is impracticable to bring the Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

69.98.  Plaintiffs' claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by TD Bank, as described herein.

70.99.  Plaintiffs are more than adequate representatives of the Classes in that Plaintiffs have or had a TD Bank checking account and have suffered damages as a result of TD's contract violations, violations of the covenant of good faith and fair dealing, unjust enrichment, and/or conversion.  In addition:

a)    Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b)    There is no conflict of interest between Plaintiffs and the unnamed members of the Classes;

c)    Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

d)    Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

71.100.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

72.101.    TD Bank has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

73.102.    All conditions precedent to bringing this action have been satisfied and/or waived.

**REQUESTS FOR RELIEF**

**COUNT ONE**
**Breach of Contract and Breach of the Covenant**
**of Good Faith and Fair Dealing**
**(On behalf of the National Class)**

74.103.    Plaintiffs reallege and incorporate by reference all the foregoing allegations as if they were fully set forth herein.

75.104.    Plaintiffs and Defendant have contracted for credit card services.  As described above, the actions of TD Bank violate the specific terms of the Card Agreement.  TD is liable for the losses of ~~Ms. Campagna, Ms. DeVault.~~Plaintiffs and the Classes that have resulted from TD's breaches of the Card Agreement.

76.105.    TD violated the contract by failing to consider and to graduate Plaintiffs~~Ms. Campagna and Ms. DeVault~~ from a secured credit card to an unsecured credit card after seven consecutive billing cycles without a default.  This breach caused ~~Ms. Campagna and Ms. DeVault~~Plaintiffs substantial damages.  Specifically, Ms. Campagna is being denied the use of her $2,000 collateral deposit ~~and~~; Ms. DeVault is being denied the use of her $1,000 collateral deposit~~.~~; Ms. Farmer is being denied the use of her $1,000 collateral deposit; Mr. Pagliaro is being denied the use of his $500 collateral deposit; and Mr. Roziner is being denied the use of his $4,000 collateral deposit.  These losses are likely to continue for many more months.  Also, TD has continued to assess annual fees and has not issued a prorated refund of the annual fees Plaintiffs were assessed for their secured credit card.  If TD follows its normal process, it will never refund any of the fees and, indeed, will continue to assess additional annual fees on the anniversary dates of Plaintiffs' accounts.  Also, Plaintiffs' credit scores have been harmed by TD's failure to shift them to an unsecured card.

77.106.    The same harms have befallen all of the members of the Classes.  All members were entitled to have TD consider them for graduation to an unsecured card after seven

17

months, but TD does not do so.  Each member has suffered the same losses as ~~Ms. Campagna and Ms. DeVault~~Plaintiffs, namely the loss of the use of their collateral funds, the loss of the annual fee refund (and assessment of additional annual fees for those who have reached their anniversary date), and a lower credit score and reduced access to credit.

~~78.~~107.    Plaintiffs and the Classes have performed all, or substantially all, of the obligations imposed on them under the contracts, or those obligations have been waived by TD Bank.  By definition, every member of the Classes has met the only contractual requirement for graduation to an unsecured line of credit.

~~79.~~108.    Pursuant to TD Bank's Card Agreement:

> Applicable federal law and the substantive laws of the State of Delaware (to the extent not preempted by federal law) without regard to principles of conflict of law or choice of law shall govern this Agreement.

Card Agreement, p. 1 ("Governing Law").

~~80.~~109.    Additionally, the section of the Card Agreement where the language about graduating to an unsecured credit card is found (Section 3 – Collateral Account and Security Agreement) states:

> This Security Agreement and our security interest and rights pledged hereunder will be governed by the laws of the State of Delaware.  We may, in our sole discretion, assign our rights and obligations under this Security Agreement.

Card Agreement, p. 2 ("Applicable Law; Assignment").  Thus, it is clear that the elements of breach of contract are identical for all members of the Classes.

~~81.~~110.    Delaware law also imposes upon each party to a contract the duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and

18

abusing the power to specify terms constitute violations of good faith and fair dealing in the performance of contracts.

~~82.~~ 111.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

~~83.~~ 112.    By acting in a discretionary manner that is inconsistent with the terms laid out in the Card Agreement, TD Bank has violated the spirit of the contract and thus breached the covenant of good faith and fair dealing.  Even if TD Bank believed that it had given itself contractual discretion to refuse to graduate cardholders from a secured credit card to an unsecured credit card, such discretion is constrained by good faith and fair dealing under Delaware law.  It simply was not acceptable for TD to lure customers away from other, better credit card options by promising that they could graduate to unsecured status after seven months when this was never TD Bank's actual practice.  Indeed, TD Bank has conceded in writing and via its staff that it does not honor this promise.

~~84.~~ 113.    Plaintiffs and the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.  There is no excuse or defense for TD Bank's conduct under Delaware law.

~~85.~~ 114.    Plaintiffs and members of the Classes sustained damages as a result of TD Bank's breaches of the covenant of good faith and fair dealing.  As such, all elements for a successful claim under Delaware law have been satisfied.

~~86.~~ 115.    Whether viewed as a direct breach of the TD Bank Card Agreement – which makes a promise that TD plainly does not keep – or as a violation of good faith and fair dealing, TD Bank should be forced to make Plaintiffs and the Classes whole.

**COUNT TWO**

**Violation of Delaware's Consumer Fraud Act, 6 Del. C. §§ 2511-27**
**(On behalf of the National Class)**

87.116.    Plaintiffs reallege and incorporate by reference all the foregoing allegations as if they were fully set forth herein.

88.117.    According to the Card Agreement, the substantive laws of the State of Delaware, which includes the Delaware Consumer Fraud Act, 6 Del. C. §§ 2511, *et seq.*, apply to this dispute.

89.118.    Defendant TD Bank is a "person" as defined by 6 Del. C. § 2511(7).

90.119.    Secured TD Bank credit cards are "merchandise" within the meaning of 6 Del. C. § 2511(6).

91.120.    The promotional page on TD Bank's website that disseminates information regarding the Bank's secured credit cards and specifically incorporates the terms of the Card Agreement therein is an "advertisement" within the meaning of 6 Del. C. § 2511(1).

92.121.    Delaware's Consumer Fraud Act provides in relevant part that:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

6 Del. C. § 2513.

93.122.    TD Bank violated the Delaware Consumer Fraud Act's proscription against the act, use, or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact by: (a) affirmatively misrepresenting at all times to Plaintiffs and Class members that they could graduate from a secured credit card to an unsecured credit card following seven months of use

without committing an act of default when, in fact, TD Bank has not honored that seven-month promise, but instead imposed a much longer graduation period of at least two-years, and/or (b) concealing from Plaintiffs and all Class members that it would not honor the seven-month promise.

94.123.    TD Bank intended that Plaintiffs and members of the Classes would rely upon its assurances regarding graduating to an unsecured credit card when applying for a secured credit card.

95.124.    TD Bank's affirmative misrepresentations occurred "in the conduct of any trade or commerce in part or wholly within this State" under the Delaware Consumer Fraud Act as: (1) at least some of the some deceivingdeceptive conduct that violates 6 Del. C. § 2513 originated, arose, was directed, and emanated from Delaware, and/or (2) the presence of TD Bank in Delaware is sufficient grounds for the Delaware Consumer Fraud Act to apply.  TD Bank imposed Delaware law on all customers and the Bank cannot escape Delaware's consumer protections.

96.125.    As a direct and proximate result of TD Bank's misconduct, Plaintiffs and the Class members have been damaged in an amount to be proven at trial.

97.126.    In addition to compensatory damages, Plaintiffs and the Classes are entitled to punitive damages because TD Bank's conduct was fraudulent, gross, oppressive, and/or reckless.  Plaintiffs and the Classes are entitled to all relief afforded under the Delaware Consumer Fraud Act.  Plaintiffs and the Classes are further entitled to reimbursement of all of their legal fees and expenses.

**COUNT THREE**

**New York General Business Law, N.Y. Gen. Bus. Law § 349, *et seq*.**
**(On Behalf of the New York Plaintiffs and Subclass)**

~~98.~~127.        Plaintiffs reallege and incorporate by reference all the foregoing allegations as if they were fully set forth herein.

~~99.~~128.        New York General Business Law § 349 ("Section 349") allows "any person who has been injured by reason of any violation of this section [to] bring an action in [their] own name . . . to recover [their] actual damages or fifty dollars, whichever is greater, or both such actions." As ~~a~~ New York ~~citizen~~citizens, Ms. Campagna ~~is~~and Mr. Rozinen are permitted to bring a claim under Section 349.

~~100.~~129.        TD Bank's refusal to graduate card holders from a secured TD Bank credit card to an unsecured TD Bank credit card violates Section 349.

~~101.~~130.        Section 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York. A bait-and-switch scheme such as that described above is a textbook violation of Section 349.

~~102.~~131.        As one of the largest banks in the United States with multiple branch locations in New York, Defendant conducted business, trade, or commerce in New York State.

~~103.~~132.        In the conduct of its business, trade, and commerce, and in furnishing services in New York State, Defendant's actions were directed at consumers.

~~104.~~133.        In the conduct of its business, trade, and commerce, and in furnishing services in New York State, Defendant engaged in deceptive, unfair, and unlawful trade acts or practices, in violation of Section 349(a), including but not limited to the following:

a.        Defendant misrepresented material facts pertaining to the when a card holder would graduate from a secured credit card to an unsecured credit card to the New York Subclass by representing in the Card Agreement that it would only take seven billing cycles to graduate

22

when, in fact, it is TD Bank's practice not to graduate a card holder until they have exceeded at least 24 billing cycles in good standing; and

   b. Defendant omitted, suppressed, and concealed the material fact that it takes at least two years rather than seven months to graduate from a secured credit card to an unsecured credit card.

   105.134.   Defendant systematically engaged in this deceptive, misleading, and unlawful act and practice to the detriment of Ms. Campagna, Mr. Roziner, and the members of the New York Subclass.

   106.135.   Defendant willfully engaged in such acts and practices and knew that it violated Section 349 or showed reckless disregard for whether it violated Section 349.

   107.136.   As a direct and proximate result of Defendant's deceptive trade practices, New York Subclass members suffered injury and/or damages, including the loss of the use of the monetary collateral the card holder provided TD Bank when it opened the secured credit card and the loss of all or part of the annual fees they paid to TD Bank.

   108.137.   These unfair and deceptive practices and acts by TD Bank were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

   109.138.   TD Bank's actions were negligent, knowing, and willful, and/or wanton and reckless with respect to the rights of members of the New York Subclass. Facts that have already come to light show that TD Bank has continued this practice for over five years. TD staffers have confirmed that customers regularly complain about the bait-and-switch techniques used by TD to get them to sign up. TD's willfulness is further proven by the fact that a portion

of the TD Bank website – a portion that potential secured card applicants would never have reason to look at – concedes that it does not honor its contractual seven-month promise.

~~110.~~139.    Had Ms. Campagna and the members of the New York Subclass known they would not be able to graduate from a secured credit card to an unsecured credit card until two years passed rather than seven months, they would have made different decisions with respect to their enrollment in the TD secured credit card program.

~~111.~~140.    As a result of TD Bank's violations of Section 349, Ms. Campagna, Mr. Roziner, and the members of the New York Subclass have ~~the~~ lost the use of the monetary collateral they provided TD Bank when they opened the secured credit card.  They have also paid an annual fee to TD Bank that they otherwise would not have paid and/or they have not been paid a pro-rated refund as promised.  They have also suffered damage to their credit which increases their expense of borrowing and reduces their access to credit.  Accordingly, they have suffered and will continue to suffer actual damages.

~~112.~~141.    Accordingly, Ms. Campagna, Mr. Roziner, and the New York Subclass members are entitled to relief under Section 349(h), including, but not limited to, actual damages, treble damages, statutory damages, and ~~/or attorney's~~ legal fees and costs.  They are further entitled to any and all other relief afforded under Section 349.

**COUNT FOUR**

**Violations of the New Jersey Consumer Fraud Act**
**(On behalf of the New Jersey Plaintiff and Subclass)**

~~113.~~142.    Plaintiffs reallege and incorporate by reference all the foregoing allegations as if they were fully set forth herein.

~~114.~~143.    TD Bank engages in unfair business practices relating to its administration of its secured credit card program, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-~~2~~1, *et seq.*  Ms. DeVault is a New Jersey citizen.

24

115.144.    TD Bank is a "person" as defined by § 56:8-1(d).

116.145.    TD Bank's secured credit cards constitute "merchandise" as defined by § 56:8-1(c).

117.146.    TD Bank's practices relating to the its secured credit card program are unlawful and constitute an "unconscionable commercial practice, deception, fraud . . . [and] misrepresentation, or the knowing, concealment, suppression, or omission of material facts" in connection with their services as defined by § 56:8-2.

118.147.    Under the New Jersey Consumer Fraud Act, such conduct done in connection with the sale or advertisement of its secured credit cards is unlawful whether or not any person has in fact been misled, deceived, or damaged thereby.

119.148.    As alleged herein, Ms. DeVault, on behalf of herself and the New Jersey Subclass, performed their any requisite obligations under the secured credit card program.

120.149.    As redress for TD Bank's repeated and ongoing violations of the New Jersey Consumer Fraud Act, Plaintiffs Ms. DeVault and the Class New Jersey Subclass are entitled to damages and declaratory relief pursuant to §§ 56:8-2.12 and 56:8-159. They are also entitled to any other relief afforded by the New Jersey Consumer Fraud Act.

121.150.    Further, pursuant to § 56:8-19, Plaintiffs Ms. DeVault and the New Jersey Subclass are entitled to court costs and reasonable and necessary attorneys' legal fees and expenses in connection with this action.

**COUNT FIVE**

**Violations of the Connecticut Unfair Trade Practices Act**
**(On behalf of the Connecticut Plaintiff and Subclass)**

151.    Plaintiffs reallege and incorporate by reference all the foregoing allegations as if they were fully set forth herein.

152.    TD Bank engages in unfair methods of competition and unfair or deceptive acts or practices relating to its administration of its secured credit card program in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.*  Mr. Pagliaro is a Connecticut citizen.

153.    TD Bank is a "person" as defined by § 42-110a(3).

154.    TD Bank's secured credit cards constitute "trade and commerce" as defined by § 42-110a(4).

155.    TD Bank's practices relating to its secured credit card program are unlawful and constitute an "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" as defined by § 42-110b.

156.    Under the Connecticut Unfair Trade Practices Act, such conduct done in connection with the sale or advertisement of its secured credit cards is unlawful whether or not any person has in fact been misled, deceived, or damaged thereby.

157.    As alleged herein, Mr. Pagliaro, on behalf of herself and the Connecticut Subclass, performed any requisite obligations under the secured credit card program.

158.    As redress for TD Bank's repeated and ongoing violations of the Connecticut Unfair Trade Practices Act, Mr. Pagliaro and the Connecticut Subclass are entitled to damages and injunctive or equitable relief pursuant to § 42-110g.  They are also entitled to any other relief afforded by the Connecticut Unfair Trade Practices Act.

159.    Further, pursuant to § 42-110g, Mr. Pagliaro and the Connecticut Subclass are entitled to court costs and reasonable and necessary legal fees and expenses in connection with this action.

WHEREFORE, Plaintiffs Natalie Campagna and, Gloria DeVault, Natalie Farmer, Philip Pagliaro, and Yaakov Roziner, on behalf of themselves and the proposed Classes, request that this Court:

(a)    Certify this case as a class action pursuant to Federal Rule 23;

(b)    Find for Plaintiffs as to all claims set forth herein;

(c)    Award Plaintiffs and the Classes actual, incidental, and consequential damages in an amount to be proven at trial, including any and all compensatory damages, punitive damages, restitution, any applicable penalties and interest, authorized attorneys' fees, interest, and costs, and any further relief as the Court deems just, equitable, and proper;

(d)    Award all reasonable costslegal fees and attorneys' feesexpenses incurred by Plaintiffs;

(e)    Award Plaintiffs and the National Class damages, including punitive damages, and attorneys' fees and expenses pursuant to Delaware's Consumer Fraud Act;

(f)    Award Ms. Campagna, Mr. Roziner, and the New York Subclass damages, including treble damages, and attorneys' fees pursuant to New York General Business Law § 349;

(g)    Award Ms. DeVault and the New Jersey Subclass damages, including costs and attorneys' fees pursuant to New Jersey Consumer Fraud Act;

(h)    Award Mr. Pagliaro and the Connecticut subclass damages, including punitive damages and attorneys' fees and expenses pursuant to the Connecticut Unfair Trade Practices Act;

(h)(i)    Hold a trial by jury on all matters; and

(i)(j)    ForAward such other and further relief as the Court may deem just and equitable.

27

28

DATED this ____22nd day ~~December, 2020~~January, 2021.

Respectfully submitted,

BY:   GOLOMB & HONIK, P.C.

/s/ Kenneth J. Grunfeld
Kenneth J. Grunfeld, Esquire
  New Jersey Bar No.: 026091999
1835 Market Street
Suite 2900
Philadelphia, PA 19103
(215) 985-9177
kgrunfeld@golombhonik.com

E. Adam Webb*
WEBB, KLASE & LEMOND, LLC

~~/s/ E. Adam Webb~~
~~E. Adam Webb~~
~~  Georgia Bar No. 743910~~
~~Matthew C. Klase~~
~~  Georgia Bar No. 141903~~
~~G. Franklin Lemond, Jr.~~
~~  Georgia Bar No. 141315~~

1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-~~9325~~0773
Adam@WebbLLC.com
~~Matt@WebbLLC.com~~
~~Franklin@WebbLLC.com~~

*Attorneys for Plaintiffs*

*Pro Hac Vice Application Forthcoming

29