## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### CAMDEN DIVISION

| | |
|---|---|
| NATALIE CAMPAGNA, GLORIA DEVAULT, AMANDA FARMER, PHILIP PAGLIARO, and YAAKOV ROZINER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TD BANK, N.A., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:20-cv-18533-KMW-SAK <br> ) <br> ) <br> ) <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Natalie Campagna, Gloria DeVault, Amanda Farmer, Philip Pagliaro, and Yaakov Roziner, pursuant to Federal Rule of Civil Procedure 15(a)(2) and this Court's scheduling orders (ECF Nos. 42, 50), on behalf of themselves and the classes of persons preliminarily defined below, bring this Second Amended Class Action Complaint against Defendant TD Bank, N.A. ("TD" or "TD Bank") as follows:

## INTRODUCTION

1.      This is a civil action seeking monetary damages from TD Bank arising from its improper business practices in connection with consumer credit card accounts.

2.      For consumers who need to build or rebuild their credit score, TD Bank offers a secured credit card.

3.      A secured credit card is a credit card that requires a security deposit which is held as collateral in a savings account. The deposit in the savings account "secures" the credit line for

the card.  The issuer of the credit card essentially has no risk because funds are available in the savings account up to the amount of the credit limit on the card.

4.     A consumer who applies for, and is issued, a TD secured credit card is also required to open a TD Simple Savings Account to hold their security deposit.

5.     Once approved for the secured credit card, the consumer has 15 days to deposit funds in their TD Simple Savings account.

6.     The funds in the TD Simple Savings account are frozen and cannot be accessed by the consumer while the secured credit card account is open.

7.     In its contract and the promotional webpage and solicitations that are incorporated in the contract, TD Bank informs consumers that, if they use and maintain their secured credit card and keep it in good standing for seven consecutive billing cycles, they can "graduate" to an unsecured TD Bank Credit Card.

8.     Graduating to an unsecured TD Bank Credit Card allows consumers to regain control of the funds in the TD Simple Savings account that had previously been held as security. In accordance with TD Bank's terms, shifting to an unsecured card also entitles consumers to a prorated refund of the annual fee that they were charged for having a secured credit card.

9.     Other benefits of moving from a secured to an unsecured account include a boost to the consumer's credit score after the change is reported to the credit reporting agencies by TD.

10.     The reality is, however, that, despite the fact that TD Bank's form contract and promotional materials, promise a meaningful review of secured card accounts after seven months in good standing that does not in fact occur.  The limited discovery to date proves conclusively that the "seven-month promise" is always breached by TD.

11.     The limited documents and information disclosed thus far by TD also reveal a series of newly-discovered breaches of good faith and fair dealing by TD.  While the contract

and TD's marketing materials only reference keeping a secured credit card in good standing for seven consecutive billing cycles as a criterion utilized to determine whether or not consumers can graduate to an unsecured TD Bank Credit Card, TD Bank actually utilizes nine secret criteria that it refuses to disclose to consumers when determining whether or not a consumer is eligible to graduate.   When combined with the ignored seven-month promise, these criteria create a totally false premise for customers considering secured credit card accounts.   TD Bank signs up such customers based on falsehoods and misrepresentations, as opposed to allowing customers to pick superior products offered by TD's competitors.

12.     By doing so, TD violates the terms set forth in TD's contractual documents.   TD Bank's conduct also results in TD continuing to exercise control over the collateral funds in the TD Simple Savings account and its refusal to refund the annual fee paid by consumers for the secured credit card.   TD Bank's scheme robs consumers of several of the benefits of the bargain. This practice also gives TD Bank an unfair advantage over competitors, which do not promise to upgrade accounts in seven months, and therefore lose business to TD.

## PROCEDURAL HISTORY

13.     On or about April 3, 2020, Plaintiff Natalie Campagna, on behalf of herself and others similarly situated, filed a complaint against TD Bank in the State Court of Muscogee County, Georgia, a location which was mentioned numerous times as the contact point for customers in the secured card contract.

14.     On May 8, 2020, TD Bank removed this action to the United States District Court for the Middle District of Georgia.   *See* ECF No. 1 in Case No. 4:20-cv-00094-CDL (M.D. Ga.).

15.     Thereafter, TD Bank moved to dismiss the complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.   *See* ECF No. 10 in Case No. 4:20-cv-00094-CDL (M.D. Ga.).

16.     On December 4, 2020, the Georgia court granted TD's motion to dismiss for lack of personal jurisdiction. *See* ECF No. 13 in Case No. 4:20-cv-00094-CDL (M.D. Ga.).

17.     On December 8, 2020, Plaintiffs Natalie Campagna and Gloria DeVault, on behalf of themselves and others similarly situated, commenced this action. *See* ECF No. 1.

18.     Pursuant to the stipulation of the parties, which was adopted by the Court (ECF No. 41), TD Bank filed a motion to dismiss on January 19, 2021 (ECF No. 9).

19.     On January 22, 2021, Plaintiffs filed an Amended Complaint that, inter alia, added Amanda Farmer, Philip Pagliaro, and Yaakov Roziner as named Plaintiffs and added causes of action. *Id.*

20.     In response, TD Bank filed a supplement to its motion to dismiss (ECF No. 20).

21.     After briefing on TD Bank's motion was complete, Judge Bumb issued a written Opinion (ECF No. 31), and entered an Order (ECF No. 32), denying Defendant's motion.

22.     Even though this Court denied TD Bank's motion to dismiss in its entirety, TD Bank, with the approval of the Magistrate Judge, has limited the scope of Plaintiffs' breach of contract and breach of the implied covenant of good faith and fair dealing claims to the sole issue of whether TD conducts a review of the secured credit card accounts at seven months and beyond to determine if they satisfied the graduation criteria. *See* Sept. 21, 2021 Initial Scheduling Conference Transcript, p. 9:22-23.

23.     TD Bank has refused to provide even the limited discovery allowed by the Magistrate and the parties are engaging in the meet-and-confer process pursuant to the Local Rules and the Rules of Magistrate Judge King. *See* ECF No. 42.  TD's refusal to provide discovery has resulted in an incomplete amended complaint.  Despite the lack of proper disclosure by TD, Plaintiffs have filed this Second Amended Complaint in an abundance of caution based on the Court's current amendment deadline of January 5, 2022. *See* ECF No. 50.

Based on TD's refusal to provide relevant documentation, a further amendment may be appropriate after proper disclosures are received and reviewed by Plaintiffs.

24.     Even the very limited discovery that TD Bank has provided to date, however, has revealed facts that prove the scope of TD's improprieties have been far broader than previously realized.  For example, Defendant utilizes nine secret criteria to determine whether or not to graduate customers to an unsecured credit card.  These criteria are never disclosed to consumers. In accordance with the admitted criteria, TD's seven-month promise is breached as to every customer, every time.   TD's solicitations are inaccurate and misrepresentative of its actual practices.

25.     Therefore, Plaintiffs have sought leave, in accordance with the Court's Scheduling Order (ECF No. 42), as amended (ECF No. 50), to amend their operative pleading to update their allegations.

## PARTIES

26.     Plaintiff Natalie Campagna is a citizen of the State of New York.  Ms. Campagna has contracted with TD Bank for a "TD Cash VISA Secured Card."

27.     Plaintiff Gloria DeVault is a citizen of the State of New Jersey.  Ms. DeVault has contracted with TD Bank for a "TD Cash VISA Secured Card."

28.     Plaintiff Amanda Farmer is a citizen of the State of South Carolina.  Ms. Farmer has contracted with TD Bank for a "TD Cash VISA Secured Card."

29.     Plaintiff Philip Pagliaro is a citizen of the State of Connecticut.  Mr. Pagliaro has contracted with TD Bank for a "TD Cash VISA Secured Card."

30.     Plaintiff Yaakov Roziner is a citizen of the State of New York.  Mr. Roziner has also contracted with TD Bank for a "TD Cash VISA Secured Card."

31.     Defendant TD Bank is headquartered in Cherry Hill, New Jersey.  TD has approximately 1,300 branches and 1,900 ATM machines in the United States.  By assets, TD Bank is now ranked in the top 10 among U.S. banks and provides banking services to 6,500,000 east coast customers from Maine to Florida.

32.     TD Bank has 242 branches in New Jersey and provides banking services to over 12% of the state's bank customers.

## JURISDICTION AND VENUE

33.     This Court has jurisdiction over the subject matter presented by this Second Amended Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), which explicitly provides for the original jurisdiction of the federal courts of any class action in which any member of the class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000, exclusive of interest and costs.  *See* ECF No. 31, pp. 6-7.

34.     Plaintiffs allege that the total claims of members of the proposed class in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6).  Plaintiffs are citizens of the New York, New Jersey, South Carolina, and Connecticut, whereas Defendant is a citizen of New Jersey for purposes of diversity.  The proposed class will include consumers from dozens of states.  Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).  Furthermore, most of the members of the proposed class are citizens of a state other than New Jersey, where this action is being filed, and the total number of members of the proposed class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).  *See* ECF No. 31, pp. 6-7.

35.     Venue is proper in the District of New Jersey pursuant to the facts described above which include the presence of the TD Bank headquarters, hundreds of bank branches, and hundreds of thousands of customers in this District.  *Id.*

## COMMON FACTUAL ALLEGATIONS

36.     Secured credit cards are not used by the wealthy or those with good credit.  Such cards are the only option to obtain a credit card for those without established credit.  According to the Federal Deposit Insurance Corporation ("FDIC"):

> Cash secured credit cards are generally marketed to two consumers groups: those with poor credit scores or prior credit problems and those with a limited or non-existent credit history. These programs can allow consumers an opportunity to establish or re-establish their credit. The accounts are collateralized by savings accounts or certificates of deposits. Cash secured credit card lending can be profitable and attractive to institutions because the receivables are self funding, finance charges and fees are high, the collateral is liquid, and new markets are opened.

FDIC Credit Card Activities Manual, ch. 2 (accessed on January 5, 2022).[1]  Thus, TD Bank knowingly markets its secured card program to consumers with the least ability to obtain credit on favorable terms.  The secured card program offers high profits with almost no risk, so TD is highly motivated to add customers to the program.

37.     In the Consumer Financial Protection Bureau's manual "Building Credit from Scratch," the Bureau explains how consumers use secured cards to develop credit.

> Apply for this card as you would a traditional credit card. Once approved you deposit an amount of money – which can range from $50 to $300 – into a separate account. The bank holds onto this deposit and extends a credit line matching the deposit amount. Generally, you can build credit with a secured card, but be sure to ask your card issuer about reporting to the credit reporting companies. Many of these cards include a "graduation" component, so you are able to move from a secured card to a traditional credit card seamlessly after establishing a pattern of consistent payments.

Thus, TD is aware that an important aspect of the secured card for many consumers is graduation

---

[1] *See* https://www.fdic.gov/regulations/examinations/credit_card/ch2.html

to a traditional credit card "after establishing a pattern of consistent payments."  By offering more certain standards for graduation than other banks – namely graduation after seven months with no default – TD is more likely to sign up profitable customers.

38.    TD's secured credit cards like those held by Plaintiffs are governed by the Card Agreement, which is a ten-page form contract drafted by TD Bank.  *See* Card Agreement (Exhibit 1 hereto).

39.    The Card Agreement incorporates by reference TD's marketing materials:

> This Personal Credit Card Agreement, the Interest Rate and Fee Schedule **and the application or solicitation you submitted for this Credit Card Account are all a part of** and collectively referred to as the "*Agreement*."

*See* Card Agreement, p. 1 (emphasis added).  Thus, TD's promotional solicitations to prospective customers are part of the contract.  TD Bank has thus far failed to provide in discovery its marketing solicitations from the relevant time period.  TD does, however, agree that it must provide these materials to Plaintiffs.  TD's tardy disclosure of these materials may warrant further amendment after the Court's current deadline.  The allegations herein are based on the one solicitation already in the possession of the Plaintiffs.

40.    Prior the filing of this lawsuit, TD bank stated as follows in one of its most prominent solicitations:

> **The key is to pay your balance on time each month**
> If you use and maintain the card and keep it in good standing, you may be eligible to graduate to an unsecured TD Bank Credit Card

Cash Secured Credit Card Website, p. 3 (Exhibit 2 hereto).  A footnote directly after this provision advises consumers as follows:

> For details, read the <u>Personal Credit Card Agreement for TD Cash Secured,</u> <u>important terms and conditions for Cash Secured,</u> and <u>TD Simple Savings Account</u> <u>Guide</u>.

These underlined documents were directly linked from the TD Bank website and, therefore,

versions of all three documents for all relevant time periods are in the possession of Defendant. TD has not yet provided all versions of the linked documents.  TD's tardy disclosure of these materials may warrant further amendment after the Court's current deadline.  The allegations herein are based on the versions of the documents already in the possession of the Plaintiffs.

41.     The Card Agreement has a specific paragraph that governs eligibility to graduate from a secured to an unsecured credit card.  *See* Card Agreement, p. 2.  The relevant paragraph reads as follows:

> **C. Eligibility for an Unsecured Card.** If you use and maintain a Credit Card Account for 7 consecutive Billing Cycles without committing an act of default pursuant to the Agreement you may be eligible to graduate to an unsecured TD Bank credit card automatically. This means that your savings account that secured the credit card will be released so you will have access to these funds. Upon graduation, a prorated refund of the annual fee will be given to you and it will appear on a subsequent monthly statement. Your credit limit and your APR will remain the same. Your account will automatically be reviewed once you meet the threshold eligibility requirements. If you are not graduated at your first review, your account will automatically be reviewed on an ongoing basis thereafter to determine if you have become eligible for an unsecured account. If you meet the requirements you will be notified of the impending automatic graduation. All other terms and conditions remain the same.

42.     Most notably, Section 3(C) explicitly states: "If you use and maintain a Credit Card Account for 7 consecutive Billing Cycles without committing an act of default pursuant to the Agreement, you may be eligible to graduate to an unsecured TD Bank credit card automatically."  *Id.*  TD Bank has now conceded via its discovery responses that it did not during the relevant period – and does not now – honor this promise.  Namely, customers who keep up their end of the bargain by using and maintaining a card for seven consecutive billing cycles without a default are ***not*** eligible to graduate.

43.     The Card Agreement defines default as follows:

> **A. Events of Default.** Subject to restrictions of applicable law, you will be in default and we will not be obligated to honor any attempted use of your Credit Card Account (even if we do not give you advance notice) if any of the following events occurs:

• We do not receive any payment required by this Agreement when such payment is due.
• You exceed any credit limit.
• A levy is placed on the Collateral Account.
• You are unwilling or unable to pay what you owe under this Agreement, for any reason.
• You die, become insolvent, file for bankruptcy or otherwise become the subject of a bankruptcy petition or filing.
• You give us false or misleading information at any time in connection with your Credit Card Account.
• You send us more than one check or similar instrument that is returned to us unpaid or any automatic, electronic or other payment on your Credit Card Account cannot be processed or is returned unpaid, for any reason, within the last six Billing Cycles.
• You breach or otherwise fail to comply with any term or condition of this Agreement.
• We have reason to suspect that you may have engaged or participated in any unusual, suspicious, fraudulent or illegal activity on your Credit Card Account or any other account or loan you have with us or our affiliates.
• You do not give us any updating information about your finances, employment or any other information we may reasonably request, promptly after our request.

*See* Card Agreement, p. 6 (Section 7(A).

44.     Using the card and avoiding default for seven months are the only eligibility requirements mentioned in the Card Agreement regarding graduating to an unsecured credit card. Paying on time (and thus avoiding default) is also stated to be the "key" requirement in the one known solicitation from the relevant period.  "Key" is defined as "something that affords a means of access."  In reality, paying your balance and staying in good standing for seven months was not the key to graduation to an unsecured card.  In fact, graduation was ***impossible*** through these promised methods.

45.     This section of the Card Agreement also states: "Your account will automatically be reviewed [for graduation] once you meet the threshold eligibility requirements."  "Threshold" is defined as "any point of beginning."  The "threshold eligibility requirements" are those referred to earlier in the contract: to "use and maintain a Credit Card Account for 7 consecutive Billing Cycles without committing an act of default."  TD Bank has now conceded that such

automatic review can ***never*** lead to graduation after only seven months in good standing.

46.     TD has gone even further on page 6 of the latest version of the TD Cash Secured

Important Credit Card Terms and Conditions, by stating:

> If I graduate from TD Cash Secured Credit Card, how do I earn rewards? • **Once you have met the eligibility requirements to graduate to a TD Cash Unsecured credit card (see your Credit Card Agreement for more details)**, your rewards balance will transfer to your new credit card and you will earn three (3) Points for each dollar ($1) of Dining Purchases, two (2) Points for each dollar ($1) of Grocery Store Purchases, and one (1) Point for each one dollar ($1) of other Purchases.

TD promises that, once a customer meets the eligibility requirements, they will be graduated to

an unsecured card.  Further, only the Card Agreement is referenced for details about eligibility.

47.     Therefore, TD represents to consumers that, after seven months, their account will

automatically be reviewed and, if they have not defaulted, their account will graduate to an

unsecured credit card or, at the very least, that their accounts may be graduated at that time.  This

is not true.

48.     The Card Agreement also provides that upon graduation, "your saving account

that secured the credit card will be released so you will have access to these funds."  This benefit

cannot possibly be obtained after seven months in good standing under the actual practices of TD

Bank.

49.     Further, the Card Agreement promises: "Upon graduation, a prorated refund of

the annual fee will be given to you and it will appear on a subsequent monthly statement."

Pursuant to the actual policies and practices of TD Bank, such a refund is ***never*** available during

a customer's first year with TD.

50.     If an account has not been kept in good standing for seven consecutive months,

then TD promises to "automatically" review the account "on an ongoing basis thereafter to

determine if you have become eligible."  Thus, if the customer later completes seven months in a

row with no default, TD should "automatically" graduate the account.  Indeed, the Card Agreement states "[i]f you meet the requirements you will be notified of the impending ***automatic*** graduation."  (emphasis added).  "Automatic" means "occurring independently of volition or intention."  Thus, for those customers who use their card and maintain good standing for any seven-month period, TD promises that they will be automatically graduated or, at the very least, that they will be automatically eligible for graduation.  TD Bank's own documents prove this promise to be false.  Indeed, multiple secret criteria that have been adopted by TD without disclosure to customers ensure that ***no customer could ever*** be graduated in the promised time-frame.

51.     Secret, internal TD Bank documents reveal that TD Bank's reference to graduating to an unsecured card "[i]f you use and maintain a Credit Card Account for 7 consecutive Billing Cycles without committing an act of default pursuant to the Agreement" is a misrepresentation that has never been accurate.

52.     For example, an internal document used for training TD Bank employees only explains that graduation is determined "based on your credit score at time of monthly review and your existing credit card account activity and payments with TD Bank."  *See* TDBANK-00001493 (Exhibit 3 hereto).  Notably, further documentation not available to customer-facing employees shows that this also is not true and that Defendant has, therefore, coached its customer-facing employees to deliver inaccurate information to customers.  Nevertheless, even TD tells its employees that a credit score is used in addition to a customer's credit card history when determining whether or not someone can graduate to an unsecured credit card.  This information is never shared with customers.

53.     TD Bank's strategy manual for its secured credit card products further reveals that TD relies upon nine secret criteria to determine whether or not a cardholder can graduate to an

unsecured credit card.  These criteria were in place during the relevant time period:

- ██████████████████████
- ████████████████████████
- ███████████████████████████████████████████████
- ████████████████████████████████████
- ████████████████████████
- ████████████████████████████████████
- ██████████████████████████
- ████████████████████████████████████
- ████████████████████████████████

*See* TDBANK-00001503 (Exhibit 4 hereto).  The use of several of these criteria constituted violations of TD's contract and TD's use of other criteria without informing customers violated federal law.

54.     For example, one of the mandatory criteria was "██████████████████████████ ████████████████"  This was a mandatory requirement for graduation.  This violated TD's promise that customers would be eligible for promotion after seven months in good standing.  The Card Agreement already lists a delinquent payment as an even of default.  *See* Card Agreement, Section 7(A) ("We do not receive any payment required by this Agreement when such payment is due.").  Thus, the parties had already agreed that graduation would be permitted after seven months of non-default.  TD was not allowed to unilaterally and secretly change this critical term of the parties' bargain.

55.     By way of further example, another mandatory requirement was "████████ ██████████████████████████████"  Once again, such a payment was already an event of default.  *See* Card Agreement, Section 7(A) ("You send us more than one check or similar

13

instrument that is returned to us unpaid or any automatic, electronic or other payment on your Credit Card Account cannot be processed or is returned unpaid, for any reason, within the last six Billing Cycles."). Thus, TD unilaterally changed the seven-month deal to a ███████ requirement. Obviously, the new requirement could never be satisfied within the agreed-upon time-frame. Further, a customer could never receive a refund of the any portion of the first annual fee, as is clearly contemplated in the contract.

56.     TD's requirement that customers ████████████████████████████ ████ also violates other provisions of the contract. For example, Section G of the Card Agreement establishes minimum payment standards, such as the greater of $35 or 1% of the balance. TD is not allowed to use its discretion to secretly adopt standards which defy the parties' agreement on this critical issue.

57.     TD's secret use of credit information – without disclosure to customers – also violates federal law. In any circumstance in which a customer's credit score was ██████████ ████████████████████████ and they therefore were not graduated to an unsecured card – federal law requires prompt notice to the customer. *E.g.*, 15 U.S.C. § 1681m. This was never done because TD kept these criteria and its use of these criteria secret. TD Bank has confirmed in discovery that it does not notify customers as required by federal law. In addition to violating federal statutes and regulations, TD's use of these criteria without notifying customers violates the contract because the Card Agreement specifically incorporates any "applicable federal law" to govern the parties.

58.     TD's requirement that ███████████████████████████████████ also necessarily requires a review of the customer's credit report and credit information. Any use of such credit reporting information, followed by any negative decision by TD – including failure to graduate the account – triggers the legal requirement of notice to the customer. TD

does not send such notice in violation of applicable federal law and the contract.

59.     TD's ███████████████ also qualifies as credit reporting under applicable federal law.

60.     TD Bank has improved its policies since this case was filed.  Defendant's practices, however, still violate the contract, federal law, and state statutory consumer protections.  In TD Bank's responses to Plaintiffs' Interrogatories, Defendant described the nine currently-used criteria for graduation as follows:



*See* Response to Interrogatory No. 3 (Exhibit 5 hereto).

61.     Two of these criteria are appropriate under the contract: an account must be open for seven months and there must be activity in the account.

62.     Six of the criteria violate the contract and applicable federal law.  Five of these bases have been covered above under the prior set of secret criteria.

63.     One new standard has been added which violates the contract.  Whereas the contract required seven months without a default – and listed exceeding the card credit limit as a

default, *see* Card Agreement, Section 7(A) ("You exceed any credit limit.") – TD Bank has now extended the time-frame by ██████.  Thus, even since this lawsuit has been filed, TD Bank has chosen to double down on its breaches of the parties' agreement.

### A.  **Natalie Campagna**

64.  In the summer of 2019, Ms. Campagna began investigating secured credit cards that included a defined graduation period.

65.  A secured credit card with a defined graduation period was important to Ms. Campagna, because she ultimately wanted to transition to an unsecured credit card.

66.  During her online searches, Ms. Campagna was unable to find any other banks that were as specific as TD was about the timing and requirements to graduate from a secured credit card to an unsecured credit card.  Only TD Bank promised that a customer was eligible for the upgraded account after seven months in good standing.

67.  For example, even though Ms. Campagna was approved for a secured credit card through Citibank, the graduation policy associated with that card was quite vague, so Ms. Campagna elected to obtain a secured credit card with TD.

68.  In reliance upon the representations made by TD Bank in the Card Agreement regarding being able to graduate to an unsecured credit card following seven consecutive billing cycles in good standing, Ms. Campagna went into her local TD Bank branch and applied in person for a Cash Secured Credit Card.

69.  After being approved for the secured card, Ms. Campagna deposited $2,000 into a TD Bank Simple Savings account to be used as collateral for the credit card.

70.  Ms. Campagna began using her secured card in August 2019.

71.  On September 13, 2019, TD Bank assessed Ms. Campagna an annual fee of $29.00 for the secured card.

16

72.     Ms. Campagna used and maintained her account in good standing for seven consecutive billing cycles.

73.     In March 2020, Ms. Campagna contacted TD Bank via telephone to inquire about her graduation to an unsecured credit card as described in the Card Agreement.

74.     TD Bank's "customer service specialist" informed Ms. Campagna that she would **not** be graduating to an unsecured credit card.

75.     The specialist also told Ms. Campagna that "she didn't know why the agreement is still on the web site" because the process of graduating to an unsecured credit card is not undertaken after seven months and the process takes into account many factors which are not included in the form contract.

76.     The specialist also advised Ms. Campagna that consumers are "always calling in" and requesting graduation to an unsecured card pursuant to the seven-month promise, but that the process takes far longer than seven months and "hardly anyone ever graduates due to the lengthy process involving many outside factors."

77.     As a result of TD Bank's refusal to graduate Ms. Campagna to an unsecured credit card, Ms. Campagna did not receive her prorated refund of the annual fee that she paid and has not regained use of the $2,000 that she was required to deposit into her TD Bank Simple Savings account as collateral.

78.     TD Bank breached the Card Agreement by refusing to consider and grant Ms. Campagna's request after she complied with the terms.

**B.      Gloria DeVault**

79.      In 2018, Ms. DeVault began investigating secured credit cards as a way of improving her credit.

80.      Ms. DeVault was attracted to TD Bank's secured credit card program because of

the specific timing requirements to graduate from a secured credit card to an unsecured credit card.

81.     In reliance upon TD Bank's promise that a customer was eligible to be upgraded from a secured credit card to an unsecured credit card after seven months in good standing, Ms. DeVault opened her secured credit card in October 2018.

82.     After maintaining her secured credit card in good standing for over seven months, Ms. DeVault contacted TD Bank about graduating to an unsecured credit card.

83.     The customer service representative stated that Ms. DeVault did not qualify to graduate to a secured credit card and recommended that Ms. DeVault try to open an unsecured card and request a larger line of credit.

84.     Ms. DeVault explained that the recommended strategy was not what TD Bank had represented to her when she signed up for the card and that she had been assured that, if she made all her payments on time, she would graduate to the unsecured card and have her security deposit refunded.

85.     Many months later, after incurring an annual fee in November 2019 and continuing to keep her account in good standing, Ms. DeVault again contacted TD Bank about graduating to an unsecured credit card.

86.     TD Bank's customer service representative again advised Ms. DeVault that she should forget about graduating and simply try to apply for an unsecured credit card directly.

87.     Once again, Ms. DeVault explained that she should not have to do that because the program she signed up for stated she would graduate to an unsecured credit card after keeping her account in good standing and that her security deposit would then be released.

88.     Ms. DeVault explained that she had an impeccable record with TD Bank and requested to speak with someone else about graduating the card as promised.

89.     TD Bank's customer service representative refused to allow Ms. DeVault to speak with anyone else.

90.     Since being denied graduation a second time, Ms. DeVault continues to keep her account in good standing and continues to incur additional fees from TD Bank, including yet another annual fee.

91.     However, Ms. DeVault has still not graduated to an unsecured credit card.

**C.    Amanda Farmer**

92.     In the spring of 2018, Ms. Farmer began investigating secured credit cards as a way of improving her credit.

93.     In reliance upon TD Bank's promise that a customer would be eligible for an upgrade to an unsecured credit card from a secured credit card after seven months in good standing, Ms. Farmer opened her secured credit card in April 2018.

94.     After being approved for the secured card, Ms. Farmer deposited $1,000 into a TD Bank Simple Savings account to be used as collateral for the credit card.

95.     Ms. Farmer has used and kept her secured credit card in good standing for more than two years without graduating to an unsecured card.[2]

96.     TD Bank assesses Ms. Farmer an annual fee of $29 for having her secured credit card every April.

97.     On numerous occasions over the past three years, Ms. Farmer has contacted TD Bank about graduating to an unsecured credit card.

98.     Despite the fact that Ms. Farmer maintained her secured credit card in good

---

[2] On one occasion in the last two years, Ms. Farmer exceeded her credit limit of $1,000 by $3.16 due to TD's assessment of a $27.00 late payment fee on her account.  That fee was later reversed due to bank error, meaning her account never should have exceeded the credit limit.  Regardless, Ms. Farmer's account was in good standing for over seven months prior to TD's mistake and has been in good standing for 13 consecutive months since then without being graduated.

standing for periods of time much longer than seven months, each time Ms. Farmer contacts TD Bank about graduating to an unsecured credit card, she is told by a "customer service specialist" that she does not qualify to graduate.

99.    Despite TD Bank's refusal to graduate Ms. Farmer in violation of the Card Agreement, Ms. Farmer continues to keep her account in good standing and continues to incur additional fees from TD Bank.  An annual fee of $29 was assessed in April 2021.

100.    In May 2021, over three years after first being issued a secured credit card, Ms. Farmer was finally upgraded to an unsecured credit card.

### D.    Philip Pagliaro

101.    In late 2016, Mr. Pagliaro began investigating secured credit cards as a way of improving his credit.

102.    In reliance upon TD Bank's promise that a customer was eligible for to be upgraded from a secured credit card to an unsecured credit card after seven months in good standing, Mr. Pagliaro opened his secured credit card in December 2016.

103.    After being approved for the secured card, Mr. Pagliaro deposited $500 into a TD Bank Simple Savings account to be used as collateral for the credit card.

104.    Mr. Pagliaro has used and maintained his secured credit card for over four years.

105.    TD Bank assesses Mr. Pagliaro an annual fee of $29 every December.

106.    On numerous occasions over the past four years, Mr. Pagliaro has contacted TD Bank about graduating to an unsecured credit card.

107.    Despite the fact that Mr. Pagliaro maintained his secured credit card in good standing for periods of time much longer than seven months, each time Mr. Pagliaro contacts TD Bank about graduating to an unsecured credit card, he is told by a "customer service specialist" that he does not qualify to graduate.

108.    Despite TD Bank's refusal to graduate Mr. Pagliaro in violation of the Card Agreement, Mr. Pagliaro continues to keep his account in good standing and continues to incur additional fees from TD Bank, including yet another $29 annual fee that was assessed in December of 2021.

109.    Mr. Pagliaro kept his account in good standing throughout 2021 but was never graduated to an unsecured credit card.

**E.**    **Yaakov Roziner**

110.    In the spring of 2019, Mr. Roziner began investigating secured credit cards as a way of improving his credit.

111.    In reliance upon TD Bank's promise that a customer was eligible to be upgraded from a secured credit card to an unsecured credit card after seven months in good standing, Mr. Roziner applied for his secured credit card in March 2019.

112.    After being approved for the secured card, Mr. Roziner deposited $4,000 into a TD Bank Simple Savings account to be used as collateral.

113.    Mr. Roziner has used and maintained his account in good standing since opening the secured credit card.

114.    In the summer of 2020, Mr. Roziner contacted TD Bank via telephone to inquire about his graduation to an unsecured credit card as described in the Card Agreement.

115.    TD Bank's "customer service specialist" informed Mr. Roziner that he would not be graduating to an unsecured credit card, but that he should wait and check back later.

116.    Recently, Mr. Roziner contacted TD Bank again to inquire about graduating to an unsecured credit card.

117.    TD Bank's "customer service specialist" informed him that he would not be graduating to an unsecured credit card because he had a late payment – which was a complete

falsehood.

118.    TD Bank's "customer service specialist" also informed Mr. Roziner that he would never be re-evaluated for promotion to an unsecured credit card again.

119.    Despite TD Bank's refusal to consider Mr. Roziner for graduation in violation of the Card Agreement, Mr. Roziner continues to keep his account in good standing, continues to incur additional fees from TD Bank, and continues to be denied use of the $4,000 collateral he deposited when he opened his account.

120.    Indeed, Mr. Roziner kept his account in good standing throughout 2021 but was never graduated to an unsecured credit card.

### F.    Plaintiffs Are But a Few of Thousands of Victims

121.    TD's handling of Plaintiffs' accounts are not isolated events.    TD Bank's discovery responses have confirmed that the challenged practices are uniform.    All of the hundreds of thousands of secured card customers have been subjected to the secret terms and practices described above in violation of their contracts, good faith and fair dealing, applicable federal laws, and state statutory consumer protections.

122.    TD Bank has confirmed that there have been over 205,000 secured credit card accountholders during the relevant period.    TD Bank has conceded multiple breaches of contract as to each customer because the seven-month promise was never true and TD Bank knew it even at the time it signed up Plaintiffs and the other customers.

123.    Many customers regularly call TD to enquire as to why their accounts have not been upgraded to unsecured accounts.    All of these requests are based on the same misrepresentations and broken promises of TD Bank.    Of course, based on the Card Agreement and Defendant's marketing materials, the process should be automatic and customers should not even need to call TD.

124.     When a consumer credit expert filmed an instructional video called "TD Bank Secured Cash Credit Card Review" about the TD Secured Credit Card, he stated that TD's card was one of the best options on the market because you know if you simply pay the card for seven months you will be automatically upgraded to an unsecured card in the eighth month.  The video is available at: https://www.youtube.com/watch?v=lq0Sy5ujK2Q

125.     Thus, even a savvy consumer, who regularly instructs other consumers on credit issues, was completely fooled by TD Bank's misrepresentations about the seven-month promise.

126.     The consumer expert recommended the card under completely false pretenses, thus perfectly illustrating the unfair competitive advantage that TD Bank gains through its willful misrepresentations about the seven-month promise.

127.     TD's practices are not new.  As suggested by the TD employees who spoke to Plaintiffs, the Bank has continued this practice for some time.  For example, a similar complaint was lodged online against TD Bank regarding the same practice in 2014.

128.      A customer known as "@taxi818" commented that he applied for a secured credit card from TD Bank in November 2013.  During the application process, this consumer was advised that he could graduate to a secured card after six months of use.

129.     After the sixth month, @taxi818 called to speak with TD Bank's customer service specialists and was told that the review period for promotion to an unsecured account took place after **two years** rather than what was stated in the contract.

130.     Other customer complaints raise similar issues with TD's failure to graduate cardholders whose accounts have been in good standing for seven consecutive billing cycles. For example, in December 2020, "Alfredo Cunha" complained:

> Im in the same boat, open this secured credit card 1 year ago and they told me I would graduate after 7 months of using and paying correctly, I have several other unsecured cards at the moment and my credit score is over 750 (FICO) across all the bureaus, they told me they evaluate my account every month after the 7th

month and for credit worthiness reason they cannot graduate my account and the worst thing is that nobody can give me a reason, they said they never promisse any graduation.[3]

131.     In August 2021, a cardholder named "Michael" stated the following:

I was told when I opened my card that the longest my money could be held was 12 months, but it could be as few as 7. It's been 24 months now, and they will not release my funds or approve me for an unsecured card. I feel very misled, lied to, and taken advantage of. I have never missed a payment, gone over my credit limit, etc. Chase Bank approved me recently for a $1000 unsecured card, and I also have another unsecured card with a $500 limit, and I've never missed a payment on any of those accounts or gone over my limit, yet TD refuses to graduate me. I'm fed up and want my original deposit back. I have an almost 700 credit score. I am going to close my account out tomorrow and never, ever go back to TD.[4]

132.     In September 2021, a cardholder named "Georgia" protested:

I was told my account would automatically change to unsecured after 8 months. It's been 17 months now. I called them at 10 months and was told "oh no, it takes much longer than that but I was welcome to apply for the unsecured card."[5]

133.     Another disgruntled cardholder stated:

It took me 5 years to get it unsecured but only after raising hell with the customer service reps in 3 different departments. I finally cursed the last rep out and hung up the phone, about a month later I received a letter stating they are unsecured my credit card. Lol crazy … after 5 years. Just put a bad taste in my mouth. Only reason I didn't close the account because it's my oldest card ... good luck everybody.[6]

134.     One consumer stated:

TD bank did the same thing to me after I had the unsecured card for 1 year and never upgraded me to a regular card so I closed the entire account out.[7]

135.     Another complained:

---

[3]  *See*   https://topclassactions.com/lawsuit-settlements/money/credit-cards/class-action-lawsuit-filed-over-td-bank-credit-card-terms/ (last visited January 5, 2022).
[4] *Id.*
[5] *Id.*
[6] *See* https://www.youtube.com/watch?v=HqNlzs4Nzkk&lc=UgwYT6jitDHE5tMf79J4AaABAg (last visited January 5, 2022).
[7] *Id.*

1 year and 6 months and if u call they only advise u need to continue waiting until unsecured. It was supposed to unsecured after 8 months[8]

136.   One customer stated:

I'm still waiting in month 8. I was told in a branch it could take 18 months or more.[9]

137.   Another customer stated:

have this secured td c.c since 2016 was told it would graduate in a year, never did. Called customer service they said have to wait until they decide to unsecure it or i can apply for another card. Can't lie td bank is not bad but was expecting to graduate but never happened[10]

138.   Yet another consumer complained:

I have TD SECURED CREDIT CARD... its been 1yr and 8 months and they havent unsecured me[11]

139.   These are but a sampling of the complaints from consumers suffering from TD Bank's improper practices.

140.   Even though TD Bank's Card Agreement clearly establishes that a consumer can graduate to an unsecured credit card following seven consecutive billing cycles, as shown above, TD Bank's internal documents prove this to be untrue.  Even worse than TD's secret criteria disclosed in discovery, however, is the actual practice suffered by most customers, where graduation usually takes two years or longer.  TD customer service representatives have referred to a two-year waiting period.

141.   This two-year waiting period is spelled out in a much less prominent location on the Bank's website.  This webpage invites consumers who *already* have a TD Secured Credit Card to apply for an unsecured credit card and informs them as follows:

Upon receipt of your application, we will review your TD Secured Credit Card account to ensure it has been open and in good standing for at least 24

---

[8] *Id.*
[9] *Id.*
[10] *See* https://www.youtube.com/watch?v=lq0Sy5ujK2Q (last visited January 5, 2022)
[11] *Id.*

> consecutive billing cycles.  We will then review your application in its entirety to determine your creditworthiness in accordance with our standard procedures for review of unsecured personal credit card applications, including, but not limited to, obtaining a credit report to determine your eligibility.

*See* You May Be Eligible for a TD Unsecured Credit Card (Exhibit 6 hereto) (available at: https://www.tdbank.com/personalcreditcard/unsecured-credit-card.html) (last visited March 26, 2020).

142.    Because this webpage is aimed at consumers who already have TD Secured Credit Cards, but want to apply for an unsecured credit card, it is not geared toward those applying for the card initially.

143.    The few procedures mentioned on this webpage are dramatically different than the criteria set forth in the Card Agreement for graduation to an unsecured credit card.  For example, the Card Agreement only mentions a seven-month waiting period, not the two-year waiting period.  *Compare* Exhibit 1, p. 2, *with* Exhibit 6.  Likewise, the Card Agreement makes no mention of a credit report needing to be pulled to make a determination as does the webpage. *Id.*  TD's own documents reveal a classic bait-and-switch scheme.

144.    This separate online document, however, cannot trump the Card Agreement, which states that the Card Agreement "replaces any other agreement relating to your Credit Card Account that you and we made earlier or at the same time" and further provides that the Card Agreement controls over any other document unless expressly provided otherwise.  *See* Card Agreement, p. 8.

145.    TD should not be allowed to rely on this webpage or the nine secret, undisclosed criteria revealed in discovery to determine eligibility for graduation to an unsecured credit card. Rather, the contract should govern.

146.    In sum, Plaintiffs' experiences with TD Bank are not isolated, but rather are illustrative of TD's improper business practices.

## CLASS ACTION ALLEGATIONS

147.    Plaintiffs bring this action individually and on behalf of all others similarly situated pursuant to Rule 23.  The Classes are preliminarily defined as:

**The National Class**

All holders of a TD Bank, N.A. Cash Secured Credit Card who, within the applicable statute of limitations preceding the filing of this lawsuit, maintained their account for seven consecutive billing cycles without committing an act of default and were not timely graduated to an unsecured TD Bank credit card.

**The New York Subclass**

All New York citizens who are holders of a TD Bank, N.A. Cash Secured Credit Card and who, within the applicable statute of limitations preceding the filing of this lawsuit, maintained their account for seven consecutive billing cycles without committing an act of default and were not timely graduated to an unsecured TD Bank credit card.

**The New Jersey Subclass**

All New Jersey citizens who are holders of a TD Bank, N.A. Cash Secured Credit Card and who, within the applicable statute of limitations preceding the filing of this lawsuit, maintained their account for seven consecutive billing cycles without committing an act of default and were not timely graduated to an unsecured TD Bank credit card.

**The Connecticut Subclass**

All Connecticut citizens who are holders of a TD Bank, N.A. Cash Secured Credit Card and who, within the applicable statute of limitations preceding the filing of this lawsuit, maintained their account for seven consecutive billing cycles without committing an act of default and were not timely graduated to an unsecured TD Bank credit card.

148.    Excluded from the Classes are:

a.      Defendant and any entities in which Defendant has a controlling interest;

b.      Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

c.      All current employees of Defendant;

d.      The judges to whom this case is assigned and any member of the judges' immediate family and any other judicial officer assigned to this case;

27

e.      Any attorneys representing Plaintiffs or the Classes; and

f.      All governmental entities.

149.    Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes and/or to add classes or subclasses if necessary before the Court determines whether certification is appropriate and as the Court may otherwise allow.

150.    The Classes will face common questions such that there is a well-defined community of interest among the members of the Classes.  These questions predominate over questions that may affect only individual class members because TD Bank has acted on grounds generally applicable to the Classes.  Such common legal or factual questions include, but are not limited to:

a.      Whether TD Bank improperly refused to consider graduation of consumers who held secured credit cards to unsecured credit cards;

b.      Whether TD Bank breaches the Card Agreement by using secret, undisclosed criteria that contradict the parties' contract;

c.      Whether TD Bank breaches the Card Agreement by failing to consider graduating consumers who held secured credit cards to unsecured credit cards after their seventh consecutive billing cycle in good standing;

d.      Whether TD Bank engages in unfair and/or deceptive trade practices in violation of Delware, New York, New Jersey, or Connecticut law by engaging in the trade practices alleged herein; and/or

e.      Whether Plaintiffs and other members of the Classes have been damaged as a result of TD Bank's wrongful business practices described herein.

151.    The parties are numerous such that joinder of them all is impracticable.  TD Bank has confirmed that over 205,000 secured card holders may be members of the Classes.  Certainly

the Classes consist of tens of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to TD's records.  TD Bank has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiffs.

152.    It is impracticable to bring the Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.   The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

153.    Plaintiffs' claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by TD Bank, as described herein.

154.    Plaintiffs are more than adequate representatives of the Classes in that Plaintiffs have or had a TD Bank secured card and have suffered damages as a result of TD's contract violations (including violations of applicable federal laws), violations of the covenant of good faith and fair dealing, and/or violations of state statutory protections.  In addition:

a)      Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b)      There is no conflict of interest between Plaintiffs and the unnamed members of the Classes;

c)     Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

d)     Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

155.   Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

156.   TD Bank has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

157.   All conditions precedent to bringing this action have been satisfied and/or waived.

158.   Indeed, this is a textbook class action.  TD Bank concedes there are 205,000 secured card customers.  Each of them was indisputably subject to practices that violate the contract.  Even if only the admitted violation of requiring ▮▮▮▮▮▮▮▮▮▮▮, rather than the promised seven months, was at issue, this would require a refund ▮▮▮▮▮ of the annual fee, which for most customers is ▮▮.  No customer could hire an attorney to litigate for ▮▮.  But TD Bank must not be allowed to keep the spoils of its bait-and-switch scheme.  A class action is the only way to obtain a just result.

## REQUESTS FOR RELIEF

### COUNT ONE
### Breach of Contract and Breach of the Covenant
### of Good Faith and Fair Dealing
### (On behalf of the National Class)

159.   Plaintiffs reallege and incorporate by reference all the foregoing allegations as if they were fully set forth herein.

160.   Plaintiffs and Defendant have contracted for credit card services.  As described above, the actions of TD Bank violate the specific terms of the Card Agreement.  TD is liable for

the losses of Plaintiffs and the Classes that have resulted from TD's breaches of the Card Agreement.

161.    TD violated the contract in several ways.  TD violated the contract by relying on secret, undisclosed criteria to determine whether or not to graduate a cardholder rather than following what was laid out in the Card Agreement.  Many of the admitted criteria actually contradict the Card Agreement (and its incorporated documents).  TD violated the contract by failing to consider and to graduate Plaintiffs from a secured credit card to an unsecured credit card after seven consecutive billing cycles without a default.  These breaches caused Plaintiffs substantial damages.   Specifically, Ms. Campagna is being denied the use of her $2,000 collateral deposit; Ms. DeVault is being denied the use of her $1,000 collateral deposit; Mr. Pagliaro is being denied the use of his $500 collateral deposit; and Mr. Roziner is being denied the use of his $4,000 collateral deposit.   These losses are likely to continue for many more months.  Also, TD has continued to assess annual fees and has not issued a prorated refund of the annual fees Plaintiffs were assessed for their secured credit card.  If TD follows its normal process, it will never refund any of the fees and, indeed, will continue to assess additional annual fees on the anniversary dates of Plaintiffs' accounts.   TD Bank has also regularly violated applicable federal law (made binding in the Card Agreement), there breaching the contract. Also, Plaintiffs' credit scores have been harmed by TD's failure to shift them to an unsecured card.

162.    The same harms have befallen all of the members of the Classes.  All members were entitled to have TD consider them for graduation based on the criteria set forth in the Card Agreement, but TD does not do so.  Each member has suffered the same losses as Plaintiffs, namely the loss of the use of their collateral funds, the loss of the annual fee refund (and assessment of additional annual fees for those who have reached their anniversary date), and a

lower credit score and reduced access to credit.

163.    Plaintiffs and the Classes have performed all, or substantially all, of the obligations imposed on them under the contracts, or those obligations have been waived by TD Bank.  By definition, every member of the Classes has met the only contractual requirement for graduation to an unsecured line of credit.

164.    Pursuant to TD Bank's Card Agreement:

> Applicable federal law and the substantive laws of the State of Delaware (to the extent not preempted by federal law) without regard to principles of conflict of law or choice of law shall govern this Agreement.

Card Agreement, p. 1 ("Governing Law").

165.    Additionally, the section of the Card Agreement where the language about graduating to an unsecured credit card is found (Section 3 – Collateral Account and Security Agreement) states:

> This Security Agreement and our security interest and rights pledged hereunder will be governed by the laws of the State of Delaware.  We may, in our sole discretion, assign our rights and obligations under this Security Agreement.

Card Agreement, p. 2 ("Applicable Law; Assignment").  Thus, it is clear that the elements of breach of contract are identical for all members of the Classes.

166.    Delaware law also imposes upon each party to a contract the duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute violations of good faith and fair dealing in the performance of contracts.

167.    Subterfuge and evasion violate the obligation of good faith in performance even

when an actor believes his conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

168.    By utilizing secret, undisclosed criteria to make determinations regarding graduation, TD Bank has violated the spirit of the contract and thus breached the covenant of good faith and fair dealing.  Even if TD Bank believed that it had given itself contractual discretion to refuse to graduate cardholders from a secured credit card to an unsecured credit card, such discretion is constrained by good faith and fair dealing under Delaware law.  It simply was not acceptable for TD to lure customers away from other, better credit card options by promising that they could graduate to unsecured status after seven months when this was never TD Bank's actual practice.  Indeed, TD Bank has conceded in writing and via its staff that it does not honor this promise.

169.    Plaintiffs and the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.  There is no excuse or defense for TD Bank's conduct under Delaware law.

170.    Plaintiffs and members of the Classes sustained damages as a result of TD Bank's breaches of the covenant of good faith and fair dealing.  As such, all elements for a successful claim under Delaware law have been satisfied.

171.    Whether viewed as a direct breach of the TD Bank Card Agreement – which makes a promise that TD plainly does not keep – or as a violation of good faith and fair dealing, TD Bank should be forced to make Plaintiffs and the Classes whole.

## COUNT TWO

### Violation of Delaware's Consumer Fraud Act, 6 Del. C. §§ 2511-27
### (On behalf of the National Class)

172.    Plaintiffs reallege and incorporate by reference all the foregoing allegations as if they were fully set forth herein.

173.    According to the Card Agreement, the substantive laws of the State of Delaware, which includes the Delaware Consumer Fraud Act, 6 Del. C. §§ 2511, *et seq.*, apply to this dispute.

174.    Defendant TD Bank is a "person" as defined by 6 Del. C. § 2511(7).

175.    Secured TD Bank credit cards are "merchandise" within the meaning of 6 Del. C. § 2511(6).

176.    The promotional page on TD Bank's website that disseminates information regarding the Bank's secured credit cards and specifically incorporates the terms of the Card Agreement therein is an "advertisement" within the meaning of 6 Del. C. § 2511(1).

177.    Delaware's Consumer Fraud Act provides in relevant part that:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

6 Del. C. § 2513(a).

178.    TD Bank violated the Delaware Consumer Fraud Act's proscription against the act, use, or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact by: (a) affirmatively misrepresenting at all times to Plaintiffs and Class members that they could graduate from a secured credit card to an unsecured credit card following seven months of use without

committing an act of default when, in fact, TD Bank has not honored that seven-month promise, but instead imposed a much longer graduation period of at least two-years, and/or (b) concealing from Plaintiffs and all Class members that it used secret, undisclosed criteria that were used to determine whether or not a cardholder could graduate from a secured credit card to an unsecured credit card.

179.    TD Bank intended that Plaintiffs and members of the Classes would rely upon its assurances regarding graduating to an unsecured credit card when applying for a secured credit card.

180.    TD Bank's affirmative misrepresentations occurred "in the conduct of any trade or commerce in part or wholly within this State" under the Delaware Consumer Fraud Act as: (1) at least some of the deceptive conduct that violates 6 Del. C. § 2513 originated, arose, was directed, and emanated from Delaware, and/or (2) the presence of TD Bank in Delaware is sufficient grounds for the Delaware Consumer Fraud Act to apply.  TD Bank imposed Delaware law on all customers and the Bank cannot escape Delaware's consumer protections.

181.    As a direct and proximate result of TD Bank's misconduct, Plaintiffs and the Class members have been damaged in an amount to be proven at trial.

182.    In addition to compensatory damages, Plaintiffs and the Classes are entitled to punitive damages because TD Bank's conduct was fraudulent, gross, oppressive, and/or reckless. Plaintiffs and the Classes are entitled to all relief afforded under the Delaware Consumer Fraud Act.  Plaintiffs and the Classes are further entitled to reimbursement of all of their legal fees and expenses.

## COUNT THREE

**New York General Business Law, N.Y. Gen. Bus. Law § 349, *et seq*.**
**(On Behalf of the New York Plaintiffs and Subclass)**

183.    Plaintiffs reallege and incorporate by reference all the foregoing allegations as if they were fully set forth herein.

184.    New York General Business Law § 349 ("Section 349") allows "any person who has been injured by reason of any violation of this section [to] bring an action in [their] own name . . . to recover [their] actual damages or fifty dollars, whichever is greater, or both such actions." As New York citizens, Ms. Campagna and Mr. Roziner are permitted to bring a claim under Section 349.

185.    TD Bank's refusal to graduate card holders from a secured TD Bank credit card to an unsecured TD Bank credit card violates Section 349.

186.    Section 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York. A bait-and-switch scheme such as that described above is a textbook violation of Section 349.

187.    As one of the largest banks in the United States with multiple branch locations in New York, Defendant conducted business, trade, or commerce in New York State.

188.    In the conduct of its business, trade, and commerce, and in furnishing services in New York State, Defendant's actions were directed at consumers.

189.    In the conduct of its business, trade, and commerce, and in furnishing services in New York State, Defendant engaged in deceptive, unfair, and unlawful trade acts or practices, in violation of Section 349(a), including but not limited to the following:

a.    Defendant misrepresented material facts pertaining to the when a card holder would graduate from a secured credit card to an unsecured credit card to the New York Subclass by representing in the Card Agreement that it would only take seven billing cycles to graduate

when, in fact, it is TD Bank's practice not to graduate a card holder until they have exceeded at least 24 billing cycles in good standing; and/or

b.      Defendant omitted, suppressed, and concealed the material fact that it takes at least two years rather than seven months to graduate from a secured credit card to an unsecured credit card; and/or

c.      Defendant omitted, suppressed, and concealed the material fact that used secret, undisclosed criteria when determining whether or not a cardholder could graduate from a secured credit card to an unsecured credit card.

190.    Defendant systematically engaged in this deceptive, misleading, and unlawful act and practice to the detriment of Ms. Campagna, Mr. Roziner, and the members of the New York Subclass.

191.    Defendant willfully engaged in such acts and practices and knew that it violated Section 349 or showed reckless disregard for whether it violated Section 349.

192.    As a direct and proximate result of Defendant's deceptive trade practices, New York Subclass members suffered injury and/or damages, including the loss of the use of the monetary collateral the card holder provided TD Bank when it opened the secured credit card and the loss of all or part of the annual fees they paid to TD Bank.

193.    These unfair and deceptive practices and acts by TD Bank were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

194.    TD Bank's actions were negligent, knowing, and willful, and/or wanton and reckless with respect to the rights of members of the New York Subclass.  Facts that have already come to light show that TD Bank has continued this practice for over five years.  TD

staffers have confirmed that customers regularly complain about the bait-and-switch techniques used by TD to get them to sign up.  TD's willfulness is further proven by the fact that a portion of the TD Bank website – a portion that potential secured card applicants would never have reason to look at – concedes that it does not honor its contractual seven-month promise.

195.    Had Ms. Campagna, Mr. Roziner, and the members of the New York Subclass known they would not be able to graduate from a secured credit card to an unsecured credit card until two years passed rather than seven months, or known TD used secret, undisclosed criteria to determine whether or not a cardholder could graduate from a secured credit card to an unsecured credit card, they would have made different decisions with respect to their enrollment in the TD secured credit card program.

196.    As a result of TD Bank's violations of Section 349, Ms. Campagna, Mr. Roziner, and the members of the New York Subclass have lost the use of the monetary collateral they provided TD Bank when they opened the secured credit card.  They have also paid an annual fee to TD Bank that they otherwise would not have paid and/or they have not been paid a pro-rated refund as promised.  They have also suffered damage to their credit which increases their expense of borrowing and reduces their access to credit.  Accordingly, they have suffered and will continue to suffer actual damages.

197.    Accordingly, Ms. Campagna, Mr. Roziner, and the New York Subclass members are entitled to relief under Section 349(h), including, but not limited to, actual damages, treble damages, statutory damages, and legal fees and costs.  They are further entitled to any and all other relief afforded under Section 349.

## COUNT FOUR

**Violations of the New Jersey Consumer Fraud Act**
**(On behalf of the New Jersey Plaintiff and Subclass)**

198.　Plaintiffs reallege and incorporate by reference all the foregoing allegations as if they were fully set forth herein.

199.　TD Bank engages in unfair business practices relating to its administration of its secured credit card program in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* Ms. DeVault is a New Jersey citizen.

200.　TD Bank is a "person" as defined by § 56:8-1(d).

201.　TD Bank's secured credit cards constitute "merchandise" as defined by § 56:8-1(c).

202.　TD Bank's practices relating to the its secured credit card program are unlawful and constitute an "unconscionable commercial practice, deception, fraud . . . [and] misrepresentation, or the knowing, concealment, suppression, or omission of material facts" in connection with their services as defined by § 56:8-2.

203.　Under the New Jersey Consumer Fraud Act, such conduct done in connection with the sale or advertisement of its secured credit cards is unlawful whether or not any person has in fact been misled, deceived, or damaged thereby.

204.　As alleged herein, Ms. DeVault, on behalf of herself and the New Jersey Subclass, performed any requisite obligations under the secured credit card program.

205.　As redress for TD Bank's repeated and ongoing violations of the New Jersey Consumer Fraud Act, Ms. DeVault and the New Jersey Subclass are entitled to damages and declaratory relief pursuant to §§ 56:8-2.12 and 56:8-159. They are also entitled to any other relief afforded by the New Jersey Consumer Fraud Act.

206.    Further, pursuant to § 56:8-19, Ms. DeVault and the New Jersey Subclass are entitled to court costs and reasonable and necessary legal fees and expenses in connection with this action.

**COUNT FIVE**

**Violations of the Connecticut Unfair Trade Practices Act**
**(On behalf of the Connecticut Plaintiff and Subclass)**

207.    Plaintiffs reallege and incorporate by reference all the foregoing allegations as if they were fully set forth herein.

208.    TD Bank engages in unfair methods of competition and unfair or deceptive acts or practices relating to its administration of its secured credit card program in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.*  Mr. Pagliaro is a Connecticut citizen.

209.    TD Bank is a "person" as defined by § 42-110a(3).

210.    TD Bank's secured credit cards constitute "trade and commerce" as defined by § 42-110a(4).

211.    TD Bank's practices relating to its secured credit card program are unlawful and constitute an "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" as defined by § 42-110b.

212.    Under the Connecticut Unfair Trade Practices Act, such conduct done in connection with the sale or advertisement of its secured credit cards is unlawful whether or not any person has in fact been misled, deceived, or damaged thereby.

213.    As alleged herein, Mr. Pagliaro, on behalf of himself and the Connecticut Subclass, performed any requisite obligations under the secured credit card program.

214.    As redress for TD Bank's repeated and ongoing violations of the Connecticut Unfair Trade Practices Act, Mr. Pagliaro and the Connecticut Subclass are entitled to damages

and injunctive or equitable relief pursuant to § 42-110g.  They are also entitled to any other relief afforded by the Connecticut Unfair Trade Practices Act.

215.     Further, pursuant to § 42-110g, Mr. Pagliaro and the Connecticut Subclass are entitled to court costs and reasonable and necessary legal fees and expenses in connection with this action.

WHEREFORE, Plaintiffs Natalie Campagna, Gloria DeVault, Natalie Farmer, Philip Pagliaro, and Yaakov Roziner, on behalf of themselves and the proposed Classes, request that this Court:

(a)     Certify this case as a class action pursuant to Federal Rule 23;

(b)     Find for Plaintiffs as to all claims set forth herein;

(c)     Award Plaintiffs and the Classes actual, incidental, and consequential damages in an amount to be proven at trial, including any and all compensatory damages, punitive damages, restitution, any applicable penalties and interest, authorized attorneys' fees, interest, and costs, and any further relief as the Court deems just, equitable, and proper;

(d)     Award all reasonable legal fees and expenses incurred by Plaintiffs;

(e)     Award Plaintiffs and the National Class damages, including punitive damages, and attorneys' fees and expenses pursuant to Delaware's Consumer Fraud Act;

(f)     Award Ms. Campagna, Mr. Roziner, and the New York Subclass damages, including treble damages, and attorneys' fees pursuant to New York General Business Law § 349;

(g)     Award Ms. DeVault and the New Jersey Subclass damages, including costs and attorneys' fees pursuant to New Jersey Consumer Fraud Act;

(h)     Award Mr. Pagliaro and the Connecticut subclass damages, including punitive

damages and attorneys' fees and expenses pursuant to the Connecticut Unfair

Trade Practices Act;

(i)     Hold a trial by jury on all matters; and

(j)     Award such other and further relief as the Court may deem just and equitable.

DATED this 14th day February, 2022.

Respectfully submitted,

BY:     GOLOMB SPIRT GRUNFELD, P.C.

*/s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld, Esquire
 New Jersey Bar No.: 026091999
1835 Market Street
Suite 2900
Philadelphia, PA 19103
(215) 985-9177
kgrunfeld@golomblegal.com

E. Adam Webb
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-0773
Adam@WebbLLC.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

*/s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld
