**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| NATALIE CAMPAGNA, GLORIA DEVAULT, AMANDA FARMER, PHILIP PAGLIARO, and YAAKOV ROZINER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TD BANK, N.A., <br><br> Defendant. | <br><br><br><br><br><br><br> Case No. 1:20-cv-18533-KMW-SAK |

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW FOR
PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION
OF THE SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN**

Plaintiffs Natalie Campagna, Gloria DeVault, Amanda Farmer, Philip Pagliaro, and Yaakov Roziner (collectively, "Plaintiffs")[1] respectfully submit this memorandum of law in support of their motion for: (1) preliminary approval of the settlement between Plaintiffs and Defendant TD Bank, N.A. ("Defendant" or "TD"); (2) certification of a class for purposes of the settlement; (3) appointment of Class Counsel for the Settlement Class; (4) approval of the notice plan; and (5) leave to file a motion for Attorneys' Fees, reimbursement of Expenses, and Service Awards for the named Plaintiffs.

## INTRODUCTION

Plaintiffs brought this action over two years ago challenging TD's administration of its TD Bank, N.A. Cash Secured Credit Card program.  Specifically, Plaintiffs alleged that TD failed to timely graduate cardholders who maintained their account for seven consecutive billing

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the Settlement Agreement.

cycles without committing an act of default to an unsecured TD Bank credit card.  After years of litigation and arm's-length negotiations towards a settlement, Plaintiffs have reached a final Settlement with the Defendant.  *See* Settlement Agreement and Release (the "Settlement Agreement") (Exhibit 2 to Joint Declaration of E. Adam Webb and G. Franklin Lemond, Jr.).  As described in more detail below, the Settlement Agreement provides for substantial and immediate economic relief to the proposed Settlement Class and represents an excellent outcome for members of the proposed Settlement Class.

In considering whether to grant preliminary approval of this settlement, the Court must determine whether the settlement was reached as a result of informed, arm's-length negotiations and is sufficiently fair, reasonable, and adequate that the Court will likely be able to finally approve the settlement after notice and an opportunity to opt out is provided to the Settlement Class.  As explained in further detail below, the Settlement Agreement exceeds these standards governing preliminary approval.  There are no obvious deficiencies, and the Settlement Agreement falls well within the range of reasonableness.  Its terms reflect a fair and reasonable result that is beneficial to all Settlement Class Members.  The Settlement Agreement was reached after arm's-length negotiations before neutral third-party mediator and following strongly contested litigation over the course of over two years.  In light of the work invested in this case since its filing in 2020, the Parties and all counsel are well informed and positioned to assess the risks and merit of the case.

Accordingly, Plaintiffs respectfully request that the Court grant their motion.

## BACKGROUND

## I.   LITIGATION HISTORY

On April 3, 2020, Plaintiff Natalie Campagna, on behalf of herself and others similarly situated, filed a complaint against TD Bank in the State Court of Muscogee County, Georgia,

seeking monetary damages from TD Bank for its allegedly improper business practices associated with secured consumer credit card accounts.  *See* Joint Declaration of E. Adam Webb and G. Franklin Lemond, Jr., ¶ 11 ("Plaintiffs' Counsel Decl.").  Ms. Campagna alleged that through its contract and the promotional webpage and solicitations that are incorporated in the contract, TD informs consumers that, if they use and maintain their secured credit card and keep it in good standing for seven consecutive billing cycles, they can "graduate" to an unsecured TD Bank Credit Card.  *Id.* at ¶ 8.  Ms. Campagna further alleged that upon graduating to an unsecured credit card, cardholders regain control of the funds they had deposited into a TD Simple Savings account as security and receive a prorated refund of the annual fee that they were charged for having a secured credit card.  *See* ECF No. 1 in Case No. 4:20-cv-00094-CDL (M.D. Ga.), ¶ 7.  Ms. Campagna further alleged that while TD's form contract and promotional materials promised a meaningful review of secured card accounts after seven months in good standing that review, in fact, did not occur in a fashion consistent with the parties' contract.  *Id.* at ¶¶ 8-9.

On May 8, 2020, TD Bank removed the case to the United States District Court for the Middle District of Georgia.  *See* Plaintiffs' Counsel Decl., ¶ 12; *also* ECF No. 1 in Case No. 4:20-cv-00094-CDL (M.D. Ga.).  Thereafter, TD Bank moved to dismiss the complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.  *See* Plaintiffs' Counsel Decl., ¶ 13; ECF No. 10 in Case No. 4:20-cv-00094-CDL (M.D. Ga.).

On December 4, 2020, after briefing on TD Bank's motion was complete, the district court granted TD Bank's motion to dismiss for lack of personal jurisdiction.  *See* Plaintiffs' Counsel Decl., ¶ 14; ECF No. 13 in Case No. 4:20-cv-00094-CDL (M.D. Ga.).  On December 8, 2020, Plaintiffs Natalie Campagna and Gloria DeVault, on behalf of themselves and others

similarly situated, commenced this Action in the United States District Court for the District of New Jersey.  *See* Plaintiffs' Counsel Decl., ¶ 18; ECF No. 1 in Case No. 1:20-cv-18533-KMW-SAK (D.N.J.).

TD Bank filed a motion to dismiss on January 19, 2021 (ECF No. 9).  *See* Plaintiffs' Counsel Decl., ¶ 19.  On January 22, 2021, Plaintiffs filed an Amended Complaint that, *inter alia*, added Amanda Farmer, Philip Pagliaro, and Yaakov Roziner as named Plaintiffs and added causes of action.  *Id.* at ¶ 20; ECF No. 10.  In response, on February 10, 2021, TD Bank filed a supplement to its motion to dismiss.  *See* Plaintiffs' Counsel Decl., ¶ 21; ECF No. 20.

On August 18, 2021, after briefing on TD Bank's motion was complete, this Court issued a written Opinion (ECF No. 31) and entered an Order (ECF No. 32) denying TD Bank's motion to dismiss but rejecting one of Plaintiffs' theories of liability.  *See* Plaintiffs' Counsel Decl., ¶ 22. On September 15, 2021, TD Bank filed an Answer to the Amended Complaint.  *See* ECF No. 36. Thereafter, the parties engaged in meaningful discovery.  *See* Plaintiffs' Counsel Decl., ¶ 24. The parties negotiated a confidentiality agreement and ESI protocol, served and responded to written discovery, and collected, produced, and reviewed documents responsive to the written discovery.  *Id.*  The parties also litigated discovery disputes before the Court, resulting in additional discovery.  *Id.* at ¶ 25.

In January 2022, TD Bank began using a new version of the card agreement for secured credit cards that amends the graduation provision at issue in Plaintiffs' complaints.  *See* Plaintiffs' Counsel Decl., ¶ 26.  On February 14, 2022, Plaintiffs filed a Second Amended Complaint (ECF No. 64), which TD Bank answered on March 14, 2022 (ECF No. 65).  *Id.* at ¶ 27.

## II.      SETTLEMENT NEGOTIATIONS

On May 5, 2022, after the parties had engaged in substantial discovery and reviewed detailed data concerning graduation of TD Cash Secured Credit Card accounts, the Parties participated in mediation with Magistrate Judge Joel B. Rosen (ret.) of Montgomery McCracken Walker & Rhoads LLP.  That mediation succeeded, with the parties reaching an agreement in principle to resolve this matter on a class-wide basis.  *See* Plaintiffs' Counsel Decl., ¶ 28.  Since then, counsel for the Parties worked to reduce that agreement to writing in the written Settlement Agreement presented to the Court with this Motion.  *Id.* at ¶ 29.  Through the Agreement, the Parties now agree to settle the Action in its entirety, without any admission of liability, with respect to all Released Claims of the Settlement Class.  The Parties intend this Agreement to bind Plaintiffs, TD Bank, and all Settlement Class Members who do not timely request to be excluded from the Settlement Agreement.

## III.     PROVISIONS OF THE SETTLEMENT AGREEMENT

### A.      The Settlement Class

Plaintiffs seek approval of the following nationwide class, for settlement purposes only:

> All current and former holders of a TD Bank, N.A. Cash Secured Credit Card (a) who opened their TD Cash Secured Credit Card after May 19, 2015 and before January 18, 2022, and (b) who, through the date of Preliminary Approval, (i) maintained their account for seven consecutive billing cycles without committing an act of default, and (ii) were not graduated to an unsecured TD Bank credit card in the cycle following that seven-month period.

Settlement Agreement, ¶ 44.

### B.      The Compensatory Provisions

TD has agreed to create a fund in the amount of Two Million Two Hundred Fifty Thousand and 00/100 Dollars ($2,250,000.00).  This Settlement Payment Amount includes all monetary disbursements incurred in connection with the Settlement Agreement, including but

not limited to (a) all monetary payments to the Settlement Class; (b) all Administrative Costs; (c) all attorneys' fees, costs, and expenses awarded by the Court to Class Counsel; and (d) all Service Awards to be paid to Plaintiffs. *See* Settlement Agreement, ¶ 48. For avoidance of doubt, TD Bank shall not be required to pay any additional monetary sums in settlement of the Action, nor shall it be required to bear any other fees, costs, charges, or expenses in connection with the Settlement Agreement. *Id.*

The amount of the distribution from the Net Settlement Fund to which each identifiable Participating Settlement Class Member is entitled for the Class Period (subject to the availability of data) shall be determined using the allocation method described in the Settlement Agreement. This allocation method is designed to return to all Participating Settlement Class Members a portion of the annual fee they would have paid on their TD Cash Secured Credit Card plus, if the Net Settlement Fund is sufficient, and depending on how long the Participating Settlement Class Member held their card, some additional amount too. Specifically, to the extent that the Net Settlement Fund is sufficient in amount, each Participating Settlement Class Member shall be entitled to a base award of Ten and 00/100 dollars ($10.00) from the Net Settlement Fund, as well as an Additional Component as specified in the Settlement Agreement. *See* Settlement Agreement, ¶ 88(a). If the Net Settlement Fund is not sufficient to make a $10.00 payment to each Participating Settlement Class Member, then the Net Settlement Fund shall be divided equally among Participating Settlement Class Members. *Id.* at ¶ 88(b).

To the extent that the Additional Component is to be distributed as provided in the Settlement Agreement, it shall be distributed as follows: (1) the amount available for Additional Component payments shall be the Net Settlement Fund minus the total amount of Base Component payments to all Participating Settlement Class Members; (2) the amount available

for Additional Component payments shall then be divided pro rata among Participating Settlement Class Members according to the period of time that the Participating Settlement Class Member was in a Non-Graduated State. Each Participating Settlement Class Member's Non-Graduated State shall be equal to the number of months that passed between the month following the first period of seven consecutive months of non-default on the Participating Settlement Class Member's Account, and the earliest of the month in which the Participating Settlement Class Member graduated, (ii) the month in which the Participating Settlement Class Member closed their Account, or (iii) the month of Preliminary Approval. *Id.* The total amount available for Additional Component payments shall be divided by the total months the Participating Settlement Class Members were in a Non-Graduated State to calculate the Additional Component payment for each month a Participating Settlement Class Member was in a Non-Graduated State. *Id.* The amount of each Participating Settlement Class Member's Additional Component shall be added to the Base Component and paid simultaneously. *Id.*

## C.   Change in Disclosures

After Plaintiffs filed this action, Defendant changed its Personal Credit Card Agreement – TD Cash Secured with customers to more adequately disclose how a cardholder becomes eligible for an unsecured credit card:

> TD conducts an automated review of Secured Credit Card Accounts to determine eligibility for graduation to an unsecured credit card account. Graduation will depend on, among other things, how you use your Credit Card Account, whether you have established a responsible payment history on the Credit Card Account, and whether you have responsibly managed your other credit with TD Bank and/or other creditors.
>
> If we determine that you satisfy the criteria for graduation, we will notify you and graduate the account. You need not take any action. Upon graduation, we will unlock your Collateral Account so that you are permitted to access and use the security deposit funds in that account. Also, upon graduation, if less than a year has passed since you paid your last annual fee on the Secured Credit Card

Account, we will refund a prorated amount of that annual fee according to the number of cycles left in the year following that annual fee. The refund will appear on a subsequent monthly statement. Your credit limit and your APR will remain the same. All other terms and conditions will also remain the same.

*See* Plaintiffs' Counsel Decl., ¶ 32. Although this change in disclosures was not a negotiated part of this Settlement Agreement, it was almost certainly a result of this litigation. *Id.*

**D.    The Release Provisions**

In exchange for the consideration described above, Plaintiffs and Participating Settlement Class Members agree to release Defendant and its present and former parents, subsidiaries, divisions, affiliates and other specified related parties from any and all liabilities, rights, claims, actions, causes of action, and other specified remedies, that constitute, result from, arise out of, are based upon, or relate to any of the claims that were or could have been asserted in the Action. The full text of the proposed releases is set forth in the Settlement Agreement. *See id.* at ¶¶ 103-07.

**E.    Attorneys' Fees, Expenses, and Class Representative Service Awards.**

The Parties and their counsel did not discuss the provisions regarding attorneys' fees or class representative Service Awards until after the Parties had already agreed upon the terms of the Settlement Agreement in principle, and substantive elements of the Settlement Agreement had been negotiated.  Under the terms of the Settlement Agreement, Class Counsel intends to submit a Fee and Expense Application to the Court prior to Final Approval, and any amount awarded by the Court shall be paid by the Settlement Administrator from the Settlement Fund. *See* Plaintiffs' Counsel Decl., ¶ 30.  Defendant has agreed not to oppose any application not to exceed seven hundred fifty thousand dollars ($750,000), plus costs and expenses. *See* Settlement Agreement, ¶ 109.

On behalf of the 5 Class Representative individuals, Class Counsel intends to seek Service Awards not to exceed the total amount of $27,500.00.  *Id.* at ¶ 112.  As contemplated, the original Class Representative, Natalie Campagna, would receive $7,500 and each of the four remaining Class Representatives would receive $5,000 each.  *Id.*  Defendant has agreed not oppose such a request for Service Awards, which shall be paid by the Settlement Administrator to Class Representatives out of the Settlement Fund.  *Id.*

The Parties agree that the Court's failure to approve, in whole or in part, any award for attorneys' fees or Service Awards shall not prevent the Settlement Agreement from becoming Effective, nor shall it be grounds for termination.  *Id.*

## LEGAL ARGUMENT

### I.       THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

Rule 23(e) requires judicial approval of a class action settlement.  Fed. R. Civ. P. 23(e).  Rule 23(e)(1)(B), as amended December 1, 2018, directs a court to grant preliminary settlement approval and direct notice to the proposed class if the court "will likely be able to" grant final approval under Rule 23(e)(2) and "will likely be able to" certify a settlement class for purposes of entering judgment.  Fed. R. Civ. P. 23(e)(1)(B).

In considering approval of a proposed settlement, courts are mindful of the strong judicial policy in favor of voluntary settlements particularly in the class action context."  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011).  The Third Circuit has observed that there is "an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *also, e.g.*, *In re Gen. Motors*, 55 F.3d 768, 784 (3d Cir. 1995) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").  As a result, courts "should be 'hesitant to undo an agreement that

9

has resolved a hard-fought, multi-year litigation.'" *McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 Fed. App'x 146, 150 (3d Cir. 2015) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013)).

Here, the Court should grant preliminary approval because it "will likely be able to" both grant final approval to the Settlement Agreement as "fair, reasonable, and adequate" and certify the Settlement Class for purposes of entering judgment after notice and a final approval hearing.

### A.    The Standard for Granting Preliminary Approval of the Settlement.

Rule 23(e)(2) sets out the factors a court must consider in determining whether a proposed class action settlement is "fair, reasonable, and adequate." Those factors are, whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As the Advisory Committee's note to the 2018 Rule 23 Amendment explains, subsections (A) and (B) focus on the "procedural" fairness of a settlement and subsections (C) and (D) focus on the "substantive" fairness of the settlement. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. In addition, the Third Circuit has provided guidance on

the factors a Court should consider to decide whether to approve a class action settlement. *See Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975); *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 348 (D.N.J. 2020). The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation;

> (2) the reaction of the class to the settlement;

> (3) the stage of the proceedings and the amount of discovery completed;

> (4) the risks of establishing liability;

> (5) the risks of establishing damages;

> (6) the risks of maintaining the class action through trial;

> (7) the ability of the defendants to withstand a greater judgment;

> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Somogyi*, 495 F. Supp. 3d at 348 (citing *Girsh*, 521 F.2d at 157).  These factors are merely a guide and the absence of one or more does not automatically render the settlement unfair.  *In re Valeant Pharmaceuticals Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020).

The 2018 amendment, however, recognizes that "[t]he sheer number of factors" considered in various Circuits "can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.  The 2018 Amendment "therefore directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the

primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *Id.*

Approval of a class-action settlement "is a two-step process: preliminary approval and a subsequent fairness hearing." *Jones v. Commerce Bancorp, Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007). At the preliminary approval stage, counsel must submit the proposed terms of the settlement to the Court for preliminary fairness evaluation. After a preliminary fairness finding and dissemination of notice to the settlement class members, the Court then must conduct a formal fairness and final approval hearing. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 562 (D.N.J. 1997).

**B.    The Proposed Settlement Agreement Qualifies for Preliminary Approval.**

As a procedural matter, the proposed Settlement Agreement is entitled to a presumption of fairness because it was negotiated at arm's-length after significant litigation and discovery, and Class Counsel are highly experienced in similar litigation. As a substantive matter, the terms of the Settlement Agreement represent an excellent result for the Settlement Class.

**1.    The Proposed Settlement is the Result of Vigorous, Informed, Arm's-Length Negotiation.**

Preliminary approval analysis "often focuses on whether the settlement is the product of 'arms-length negotiations.'" *Kress v. Fulton Bank, N.A.*, 2022 WL 2357296, at *2 (D.N.J. June 30, 2022). Here, the Settlement Agreement is the result of arm's-length negotiations, which included mediation with Magistrate Judge Joel Rosen, now retired, between and among Class Counsel and counsel for Defendant. During these negotiations, Class Counsel and Defendant's Counsel vigorously advocated their respective clients' positions, and all parties were prepared to

litigate the case fully if no settlement was reached.  Class Counsel are experienced litigators in consumer class actions like this one.[2]

Based on their experience, Class Counsel believe that this Settlement Agreement provides significant benefits to the Settlement Class, avoids the risks and delays associated with continued litigation, and is in the Settlement Class Members' best interest.  *See In re Am. Fam. Enterprises*, 256 B.R. 377, 421 (D.N.J. 2000) ("In determining the fairness, adequacy, and reasonableness of a proposed settlement, significant weight should also be given 'to the belief of experienced counsel that settlement is in the best interest of the class'"); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000), *aff'd sub nom.* 264 F.3d 201 (3d Cir. 2001) ("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class'").  The Parties' extensive arm's-length negotiations fully support a finding that the proposed settlement is fair.

> **2.    The Extent of Litigation and Discovery at the Time the Settlement Agreement Was Negotiated Supports Preliminary Approval.**

The stage at which settlement occurs demonstrates "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Gen. Motors Corp.*, 55 F.3d at 813.  "Where [the] negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent."  *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 400 (D.N.J. 2006) (citing *In re Linerboard Antitrust Litig.*, 292 F. Supp.2d 631, 640 (E.D. Pa. 2003)).  Significant discovery undertaken prior to reaching a settlement supports a finding that the settlement is within the range of reasonableness.  *Smith v. Pro. Billing & Mgmt. Servs., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007).

---

[2] *See* Plaintiffs' Counsel Decl. at ¶¶ 55-56 (referencing the experience and qualifications of Plaintiffs' Class Counsel).

Here, Class Counsel undertook extensive discovery that allowed Class Counsel to be fully informed on the material issues before negotiating a settlement on behalf of the Settlement Class. The Parties exchanged thousands of pages of records, responded to interrogatories and requests for production of documents. *See* Plaintiffs' Counsel Decl., ¶ 24. In addition, the Parties undertook a significant amount of data analysis in preparation for mediation with Judge Rosen. Accordingly, the extensive discovery taken here supports a finding that the settlement is within the range of reasonableness.

### 3. The Proposed Settlement Agreement is Well Within the Range of Possible Approval.

Courts also evaluate the range of reasonableness of the fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of the alternate risks of litigation. *Somogyi*, 495 F. Supp. 3d at 352. Here, the Settlement Agreement is fair, reasonable, and represents an excellent result for the Settlement Class. Under the Settlement Agreement, Defendant has agreed to fund a $2.25 million Settlement Fund to pay compensatory relief to the Settlement Class in the form of cash payments. *See* Settlement Agreement, ¶ 48. Those payments are designed to compensate all Settlement Class Members for a portion of the annual fee each paid for the TD Cash Secured Credit Card, as well as, should the amount of the Net Settlement Fund suffice, additional payments based on how long Participating Settlement Class Members were in their secured card accounts after the date Plaintiffs allege they should have graduated. These cash payments will automatically be made to all Settlement Class Members after receiving approved notice of the Settlement Agreement without having to file a claim.

This result is highly favorable to the class. The compensatory relief from the Settlement Agreement provides an immediate and sound recovery in relation to the damages potentially

available and the risk of continued litigation.  In general, the inherent risk of continued litigation reinforces the fact that the Settlement Agreement falls within the range of reasonableness.  *See In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *24 (D.N.J. Sept. 13, 2005) (citations omitted) (noting that as long as a settlement "is reasonable relative to other factors, such as the risk of no recovery," it may be approved, even if it may "amount to a hundredth or even a thousandth of a single percent of the potential recovery").  And in particular here, given the Court's rejection of Plaintiffs' automatic-graduation theories at the pleading stage, the Settlement Agreement provides a good result for the class.  In sum, the significant relief available under the Settlement Agreement falls well within the range of possible final approval.

## II. THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR CLASS CERTIFICATION.

Plaintiffs' unopposed motion satisfies all the requirements of certification of the Settlement Class.  The Third Circuit has approved class certification in light of settlement where the class satisfies the requirements of Federal Rules of Civil Procedure 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy) and 23(b).  *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010).  However, in the settlement context, the Court need not consider whether the case would present intractable management problems since, as a result of settlement, there will be no trial.  *Sullivan*, 667 F.3d at 322, n.56.  Because the proposed Settlement Class meets all applicable requirements of Rule 23, it should be certified.

### A. The Settlement Class Meets The Requirements Of Rule 23(a).

To be certified, a class must meet four criteria: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  *See* Fed. R. Civ. P. 23.  All of these requirements are met in this case.

### 1.   The Numerosity Requirement Has Been Satisfied.

Numerosity requires the members of a class to demonstrate the class is so numerous that "joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is generally satisfied where a proposed class exceeds forty (40) class members.  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  As the proposed Settlement Class contains more than 100,000 members, the numerosity requirement is easily satisfied.

### 2.   The Commonality Requirement Has Been Satisfied.

The Rule 23(a)(2) "commonality" requirement is satisfied if there is *at least one* common question of fact or law between the Plaintiffs' claims and those of the class.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (agreeing that "[f]or purposes of Rule 23(a)(2), even a single common question will do").  As such, "the United States Court of Appeals for the Third Circuit 'has recognized that courts have set a low threshold for satisfying this requirement.'"  *In re Merck & Co. Inc., Vytorin/Zetia Sec. Litig.*, 2012 WL 4482041, at *3 (D.N.J. Sept. 25, 2012) (quoting *Georgine v. Amchem Prods. Inc.*, 83 F.3d 610, 627 (3d Cir. 1996)).

Here, there are many common issues of fact and law, including:

- Whether TD Bank improperly refused to consider graduation of consumers who held secured credit cards to unsecured credit cards;

- Whether TD Bank breaches the Card Agreement by using secret, undisclosed criteria that contradict the parties' contract;

- Whether TD Bank breaches the Card Agreement by failing to consider graduating consumers who held secured credit cards to unsecured credit cards after their seventh consecutive billing cycle in good standing;

- Whether TD Bank engages in unfair and/or deceptive trade practices in violation of Delware, New York, New Jersey, or Connecticut law by engaging in the trade practices alleged herein; and/or

- Whether Plaintiffs and other members of the Classes have been damaged as a result of TD Bank's alleged wrongful business practices described herein.

These issues are more than sufficient to satisfy Rule 23(a)(2)'s commonality requirement.

### 3.    The Typicality Requirement Has Been Satisfied.

Plaintiffs' claims are also typical of the claims of the Settlement Class as a whole, thus satisfying Rule 23(a)(3).  Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citation omitted).  Factual differences between class members do not defeat typicality if the claims arise from the "same event or practice or course of conduct." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998).

Here, Plaintiffs' claims and those of Settlement Class Members arise from the same conduct.  *See generally In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 207 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002).  Plaintiffs' claims are typical of claims of all of the Members of the Settlement Class, all of whom were holders of a TD Bank, N.A. Cash Secured Credit Card during the applicable time period that maintained their account for seven consecutive billing cycles without committing an act of default, and were not graduated to an unsecured TD Bank credit card in the cycle following that seven-month period.  While Defendant has not yet had the opportunity to challenge the Plaintiffs' typicality formally in the class certification process, Plaintiffs are confident that their claims arise from the same course of events that each Settlement Class Member was subjected to, and that this same conduct caused the same injury to all of the Settlement Class Members.  The typicality prong is satisfied here.

####           4.           Plaintiffs Will Adequately Protect the Interests of the Class.

Rule 23(a)(4) is also met because the named plaintiffs will fairly and adequately protect the interests of the Settlement Class.  Adequacy "is satisfied by showing that (1) Class Counsel is competent and qualified to conduct the litigation; and (2) class representatives have no conflicts of interest." *Chocolate*, 289 F.R.D. at 218 (citing *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)).  Here the adequacy requirement is plainly met.

No conflict exists between the named and unnamed putative class members because their interests are aligned.  Plaintiffs and the class members have all been injured by the same conduct. Plaintiffs do not have any interests antagonistic to those of the other class members and all class members share a strong interest in proving Defendant's liability.  *See Blood Reagents*, 283 F.R.D. at 234 (finding adequacy requirement met where there was "no evidence of any conflict of interest between the named plaintiffs and the absent members of the putative class").   In proving their claims, Plaintiffs would prove the claims of the class.  *Id.* Further, Plaintiffs have been actively protecting the interests of the putative Classes.  They have engaged in the prosecution of this matter since its inception, having consistently conferred with Class Counsel, reviewed the various versions of the complaints in the Action, reviewed and signed their interrogatory responses, provided documents and consulted with their counsel regarding the propriety of the Settlement Agreement.

Plaintiffs are also represented by experienced counsel who has litigated this case vigorously on behalf of the class.[3]  Plaintiffs' counsel have extensive experience prosecuting cases against TD and in consumer class actions as well.  *See* Plaintiffs' Counsel Decl. at ¶¶ 55-

---

[3] Defendant is also represented by qualified and competent class actions litigators, well-positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement.

56.  They have spent over two years litigating this action as well.  *See Blood Reagents*, 283 F.R.D. at 233 (finding representation adequate based on counsel's extensive experience prosecuting complex cases).  As a result, the adequacy requirement is satisfied.[4]

> **B.     The Requirements of Rule 23(b)(3) Are Satisfied Because Questions Common to the Class Predominate and a Class Action Is Superior to Other Available Methods of Adjudication.**

In addition to the four requirements of Rule 23(a), the proposed class must also satisfy at least one provision of Rule 23(b).  Rule 23(b)(3) is satisfied when: (1) the questions of law or fact common to the class predominate over any questions affecting only individual class members ("predominance"); and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority").  Fed. R. Civ. P. 23(b)(3); *Anchem*, 521 U.S. at 615.  Both of these requirements are met here.

> **1.     Predominance Exists Here.**

The predominance standard requires the Court to "determine whether the common legal and factual issues are more significant than the non-common issues such that the class is 'sufficiently cohesive to warrant adjudication by representation.'"  *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J. 2003) (quoting *Amchem*, 521 U.S. at 623).  "'[I]n general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each

---

[4] In addition to the Rule 23 requirements, Courts also analyze the judicially created doctrine of ascertainability when evaluating whether to certify a class.  A class is ascertainable if "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."  *Byrd's v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).  Here, the class is defined with reference to objective criteria and the determination of whether someone is within the settlement class is administratively feasible because it can be made based on TD Bank's own records.

class members' [sic] individual position.'" *In re Bulk (Extruded) Graphite Products Antitrust Litig.*, 2006 WL 891362, at *9 (D.N.J. April 4, 2006) (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)).  Predominance does not require that every relevant issue before the Court be postured identically for each and every proposed class member. *Anchem*, 521 U.S. at 623; *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 484 (W.D. Pa. 1999).

To determine whether common issues will predominate, the underlying elements of the substantive claim must be identified.  Here, Defendant's liability turns on, among other things, whether their failure to graduate cardholders to unsecured credit cards following seven consecutive billing cycles without committing an act of default violates the parties' contract. Every Settlement Class Member's claims may be proven by the same set of facts.  Moreover, determining whether and to what extent Settlement Class Members were injured turns on common proof.  Regardless, when common questions of law or fact predominate regarding liability, "the existence of individual questions as to damages is generally unimportant." *Guzman v. VLM, Inc.*, 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2, 2008).  Each element presents issues that are sufficiently cohesive and common to warrant adjudication by representation. Moreover, because this case has settled, the Court need not "consider the available evidence and the method or methods by which plaintiffs would use the evidence to prove the disputed element at trial[,]" because there will be no trial.  *Sullivan*, 667 F.3d at 306 (internal quotation marks and citation omitted). As a result, the predominance element is satisfied.

### 2.    Superiority Exists Here.

The superiority prong asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The rule expressly sets forth a list of relevant factors: putative class members' interest in bringing individual actions; the extent of existing litigation by class members; the desirability of

concentrating the litigation in one forum; and potential issues with managing a class action.  Fed. R. Civ. P. 23(b)(3)(A-D).  Here, the superiority requirement is satisfied.

First, no members of the putative classes expressed interest in bringing individual actions other than Plaintiffs here.  Second, it is well settled that a class action is the superior method of adjudication where, as here, "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue . . . [and] there is reason to believe that class members may lack familiarity with the legal system, discouraging them from pursuing individual claims."  *Jankowski v. Castaldi*, 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006).  A class action would be the only practical way of resolving the claims of the putative class members here, while at the same time, avoiding the potential for repetitious litigation and inconsistent adjudications if the claims were pursued individually.  In light of the fact that each putative class member has a relatively small damage claim, combined with the fact that consumer class actions like this one are particularly expensive, complicated and lengthy, this is not surprising.  *See, i.e. Graphite Prods.*, 2006 WL 891362, at *16 ("the relatively small purchase price of bulk extruded graphite parts would likely preclude litigating this action outside a class action"); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis omitted).  Third, individual litigation has the potential to result in inconsistent or contradictory judgments. Fourth, a class action presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Because the case is settled, no manageability issues will arise.  *Sullivan*, 667 F.3d at 306.  Certification of the Settlement Class will allow for efficient resolution of claims that would likely not be brought

owing to prohibitive legal expenses, while at the same time preserving scarce judicial resources. Without the class action vehicle, the putative classes would have no reasonable remedy, and Defendant would be permitted to retain the proceeds of their violations of law.  Accordingly, a class action is the best available method for the efficient adjudication of this litigation.

C.       **Plaintiffs' Counsel Should Be Appointed Class Counsel.**

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)."  The factors listed under Rule 23(g) all favor appointment of Golomb Sprit Grunfeld, P.C. and Webb, Klase & Lemond, LLC as Class Counsel.

Class Counsel worked extensively to identify and investigate the claims, defended substantive and discovery matters before this Court, reviewed thousands of pages of documents, and responded to written discovery, among other things.  Collectively, Class Counsel has substantial knowledge of this case in particular and experience in litigating complex consumer class actions in general.  *See* Plaintiffs' Counsel Decl. at ¶ 37.  Class Counsel has expended and will continue to expend the necessary resources to represent the Settlement Class.  For these reasons Class Counsel should be appointed class counsel at this juncture of the case.

**III.    THE COURT SHOULD APPROVE THE NOTICE PLAN.**

Once a settlement has been reached on a class-wide basis, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts."  Fed. R. Civ. P. 23(c)(2)(B).  It is not necessary to actually notify all Settlement Class members; "due process does not require actual notice, but rather a good faith effort to provide actual notice."  *In re Prudential Ins. Co. of*

*Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997).

As for content of the notice, Rule 23 requires that the notice use clear, concise, and plain language to inform members of:

> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).   In the settlement context, notice must also "be designed to summarize the litigation and the settlement to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation."   *In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 327 (3d Cir. 1998) (internal quotations omitted).

### A.     The Plan and Form of Notice.

In total, there are two different forms of Notice contemplated that will be sent directly to Settlement Class Members: (1) E-Mail Notice and/or Mail Notice that will be sent to all Settlement Class Members' last known e-mail or mailing address; and (2) Long-Form Notice posted on the Settlement Website.   *See* Settlement Agreement, ¶ 56.   The costs of providing Notice will be paid out from the Settlement Fund.

The primary method of notice for Members of the Settlement Class is individual E-Mail Notice to the last known email address shown on TD Bank's records.   The secondary method of notice is individual Mail Notice to the last known mail address shown on TD Bank's records, or at a more current address, if that information can reasonably be obtained by the Settlement

Administrator.  *See* Settlement Agreement, ¶ 59.  Within 30 days from the date that the Settlement Administrator receives the Class List, the Settlement Administrator shall (1) send E-Mail Notice to Members of the Settlement Class for whom the Settlement Administrator was provided an email address; and (2) mail Mail Notice to Members of the Settlement Class for whom there are no email addresses on file.  *Id.* at ¶ 60.

The Settlement Administrator shall run the mailing addresses through the National Change of Address Database before mailing.  *Id.*  If an email is returned as undeliverable, the Settlement Administrator shall mail the Mail Notice to the Settlement Class Member.  *Id.*  For all Members of the Settlement Class, if the mailed postcard is returned as undeliverable, the Settlement Administrator shall use reasonable efforts to locate a current mailing address for the Settlement Class Member and re-mail the notice to the current address.  *Id.*

The E-Mail and Mail Notice will direct Members of the Settlement Class to the Long-Form Notice, which will be posted on the Settlement Website.  The E-Mail Notice will include a hyperlink to the Long-Form Notice.  As soon as practicable following Preliminary Approval, but prior to the sending of Notice, the Settlement Administrator shall establish the Settlement Website and a toll-free telephone line for Members of the Settlement Class to call with questions. *See* Settlement Agreement, ¶ 62.  The Internet address (URL) of the Settlement Website and the toll-free number shall be included in all forms of Notice sent to Members of the Settlement Class.  *Id.*  The Settlement Website shall include the Agreement, the Long-Form Notice, the Preliminary Approval Order, and such other documents as Class Counsel and TD Bank agree to post or that the Court orders posted on the website.

**B.    The Plan Satisfies Rule 23 and Constitutional Due Process.**

The form and content of the Notice plan comply with Rule 23 and constitutional due

process.  The Notice plan is reasonably calculated to reach the Settlement Class Members.  First, the Notice plan contemplates sending direct notice to all Settlement Class Members at their last known e-mail address, or if no e-mail address is known, to their last known mailing address.  If there exists a forwarding address for these Settlement Class Members, Notice will be sent there, and the class action administrator will take all reasonable and efficient efforts to locate class members whose E-Mail and/or Postcard Notices are returned as undeliverable.

As to the content of Notice, all forms of Notice use easily understood language to concisely and clearly inform Settlement Class Members of the nature of the Action, the definition of the proposed Settlement Class, the claims and issues, the ability to appear through counsel, the ability and process for requesting exclusion, and the binding effects of the Settlement.  The Notices also explain the terms of the Settlement, the scope of the releases, and how Settlement Class Members may opt-out or object.

### C.    The Proposed Notice Timeline.

As outlined in the Proposed Order attached hereto, Plaintiffs propose the following settlement administration timeline, with deadlines measured from the date of the Court's Order granting Preliminary Approval of the Settlement:

| Deadline | Proposed Dates |
|---|---|
| Entry of Court Order granting Preliminary Approval | |
| Creation of Settlement Website by Settlement Administrator | 30 days after Preliminary Approval |
| TD Bank to provide class list to Settlement Administrator | 60 days after Preliminary Approval |
| Notice is e-mailed and/or mailed | 90 days after Preliminary Approval |

| Filing Deadline for Plaintiffs' Motion for attorneys' fees and expenses | 120 days after Preliminary Approval |
|---|---|
| Deadline for objections and requests for exclusion | 150 days after Preliminary Approval |
| Filing Deadline for Plaintiffs' Motion for Final Approval | 7 days before final approval |
| Final Approval Hearing | _____<br><br>(170–190 days after Preliminary Approval to be set by the Court) |

## IV.   PLAINTIFFS' MOTION FOR LEAVE TO FILE A MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS FOR THE PLAINTIFFS.

Pursuant to the above proposed schedule, Plaintiffs seek leave to file a motion for attorneys' fees, reimbursement of expenses, and for Service Awards for the Plaintiffs in accordance with the Settlement Agreement.  As specified in the Proposed Preliminary Approval Order filed herewith, Settlement Class Counsel's motion for fees, expenses, and Service Awards shall be filed thirty (30) days in advance of the Settlement objection and exclusion deadlines. The timing and form of the Notice plan, discussed above, will provide Settlement Class Members with both sufficient notice of the motion for fees and expenses, and a reasonable opportunity to review it prior to determining whether to object to the motion, object to the Settlement Agreement, or opt out of the Settlement Class.  Additionally, the Long Form Notice includes the date on which the motion for fees and costs shall be filed, and informs the Settlement Class that the motion will be made available on the Settlement Website.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the proposed Preliminary Approval Order.

DATED this 25th day July, 2022.

Respectfully submitted,

BY:    GOLOMB SPIRT GRUNFELD, P.C.

*/s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld, Esquire
  New Jersey Bar No.: 026091999
1835 Market Street
Suite 2900
Philadelphia, PA 19103
(215) 985-9177
kgrunfeld@golomblegal.com

E. Adam Webb
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-0773
Adam@WebbLLC.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

*/s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld
