**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

NATALIE CAMPAGNA, GLORIA DEVAULT,
AMANDA FARMER, PHILIP PAGLIARO, and
YAAKOV ROZINER, on behalf of themselves
and all others similarly situated,

                            Plaintiffs,                      Case No. 1:20-cv-18533-KMW-SAK

v.

TD BANK, N.A.,

                            Defendant.

**<u>MOTION AND MEMORANDUM OF LAW FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT</u>**

Plaintiffs Natalie Campagna, Gloria DeVault, Amanda Farmer, Philip Pagliaro, and

Yaakov Roziner (collectively, "Class Representatives") hereby submit this motion for final

approval pursuant to the Court's Order granting Preliminary Approval (ECF No. 72), Federal

Rule of Civil Procedure 23, and Third Circuit precedent.

**<u>INTRODUCTION</u>**

The Court previously granted preliminary approval of the settlement reached by the

parties and also approved the proposed notice program.  *See* ECF No. 72.  Notice has been

disseminated to the settlement class as directed by the Court.  By this motion, Plaintiffs

respectfully request that the Court conduct a final review of the settlement, and approve the

settlement as fair, reasonable, and adequate.

As previously reported, the settlement is the product of years of hard-fought litigation and

arm's length negotiations involving complex and challenging factual and legal issues.  It follows

motion practice and discovery conducted by the parties.  And, most importantly, it will provide

valuable monetary and non-monetary benefits to secured credit card customers of Defendant TD Bank, N.A. ("TD" or "Defendant") who were allegedly not graduated to unsecured cards in a timely fashion.

Pursuant to the settlement, TD has agreed to pay Two Million Two Hundred Fifty Thousand and 00/100 Dollars ($2,250,000.00). This Settlement Payment Amount[1] includes all monetary disbursements incurred in connection with the Settlement Agreement, including but not limited to (a) all monetary payments to the Settlement Class; (b) all Administrative Costs; (c) all attorneys' fees, costs, and expenses awarded by the Court to Class Counsel; and (d) all Service Awards to be paid to the Class Representatives. *See* Settlement Agreement, ¶ 48 (ECF No. 71-2).

By any objective measure, the settlement presented for the Court's consideration is fair, reasonable, and adequate. Moreover, the settlement provides for a robust notice program, including direct, individual notice to settlement class members. The notice program has been implemented by the settlement administrator in accordance with this Court's Order granting preliminary approval.

The reaction of the settlement class thus far has been very positive, further supporting the conclusion that the settlement is fair, reasonable, and adequate. Direct notice has been provided to the settlement class via mail and email. The deadline to opt-out or object was January 27, 2023. As of February 13, 2023, only three (3) settlement class members have opted-out and *zero* objections have been submitted. For the foregoing reasons and others detailed below, the settlement meets the standards for final settlement approval and should be approved.

---

[1] All capitalized terms used herein have the same means as set forth in the Settlement Agreement.

## CASE HISTORY

A full recitation of the history of the case is set forth in the papers filed in support of preliminary approval.  *See* Plaintiffs' Motion and Memorandum of Law for Preliminary Approval, pp. 2-4 ("Litigation History"), 5 ("Settlement Negotiations") (ECF No. 70-1); *see also* Joint Declaration of Counsel, ¶¶ 6-59 ("Joint Decl.") (ECF No. 71).  Details of the case relating directly to this motion, including the efforts of Class Counsel and the Class Representatives, are set forth therein.

## ARGUMENT

Pursuant to Rule 23(e), a class action settlement must be approved by a court before it can become effective.  The process for court approval is comprised of two principal steps:

(1)    Preliminary approval of the proposed settlement and direction of notice to the class; and

(2)    A final approval hearing, at which argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

In granting preliminary approval of the settlement and directing that notice be disseminated to the settlement class, the Court took the first step in the process.  Moreover, as summarized above, the settlement administrator has (and continues to) implement the notice program directed by the Court.  *See generally* Declaration of Elizabeth Enlund ("Enlund Decl.") (Exh. 2 to ECF No. 75).  By this motion, Plaintiffs respectfully request that the Court take the final step by granting final approval of the settlement.

Preliminary approval required the Court to determine that it would "likely be able to . . . approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B).  Nothing has since undermined this Court's initial findings that final approval would be likely; in fact, the positive reaction of the settlement class has further substantiated the Court's initial conclusions and further supports final approval.

I.      **SETTLEMENT OF THE CLASS ACTION.**

A.      **The Settlement Class.**

Plaintiffs seek approval of the following nationwide class, for settlement purposes only:

> All current and former holders of a TD Bank, N.A. Cash Secured Credit Card (a) who opened their TD Cash Secured Credit Card after May 19, 2015 and before January 18, 2022, and (b) who, through the date of Preliminary Approval, (i) maintained their account for seven consecutive billing cycles without committing an act of default, and (ii) were not graduated to an unsecured TD Bank credit card in the cycle following that seven-month period.

Settlement Agreement, ¶ 44.  Excluded from the Settlement Class are TD; TD's officers and directors at all relevant times, as well as members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which TD has or had a controlling interest.  Also excluded from the Settlement Class are federal, state, and local governments and all agencies and subdivisions thereunder; and any judge to whom this Action is or has been assigned and any member of her immediate family.  *Id.*

B.      **The Compensatory Provisions.**

TD has agreed to create a fund in the amount of Two Million Two Hundred Fifty Thousand and 00/100 Dollars ($2,250,000.00).  This Settlement Payment Amount includes all monetary disbursements incurred in connection with the Settlement Agreement, including but not limited to (a) all monetary payments to the Settlement Class; (b) all Administrative Costs; (c) all attorneys' fees, costs, and expenses awarded by the Court to Class Counsel; and (d) all Service Awards to be paid to Plaintiffs.  *See* Settlement Agreement, ¶ 48.  For avoidance of doubt, TD shall not be required to pay any additional monetary sums in settlement of this action, nor shall it be required to bear any other fees, costs, charges, or expenses in connection with the Settlement Agreement.  *Id.*

The amount of the distribution from the Net Settlement Fund to which each identifiable Participating Settlement Class Member is entitled for the Class Period shall be determined using the allocation method described in the Settlement Agreement.  This allocation method is designed to return to all Participating Settlement Class Members a portion of the annual fee they would have paid on their TD Cash Secured Credit Card plus, if the Net Settlement Fund is sufficient, and depending on how long the Participating Settlement Class Member held their card, an additional amount.  Specifically, to the extent that the Net Settlement Fund is sufficient in amount, each Participating Settlement Class Member shall be entitled to a base award of ten dollars ($10.00) from the Net Settlement Fund, as well as an additional component as specified in the Settlement Agreement.  *See* Settlement Agreement, ¶ 88(a).  If the Net Settlement Fund is not sufficient to make a $10.00 payment to each Participating Settlement Class Member, then the Net Settlement Fund shall be divided equally among Participating Settlement Class Members. *Id.* at ¶ 88(b).

To the extent that the additional component is to be distributed as provided in the Settlement Agreement, it shall be distributed as follows: (1) the amount available for additional component payments shall be the Net Settlement Fund minus the total amount of base component payments to all Participating Settlement Class Members; (2) the amount available for additional component payments shall then be divided pro rata among Participating Settlement Class Members according to the period of time that the Participating Settlement Class Member was in a non-graduated state.

### C.    Change in Disclosures.

After Plaintiffs filed this action, Defendant changed its "Personal Credit Card Agreement – TD Cash Secured" with customers to provide better disclosures as to how a cardholder can

become eligible for an unsecured credit card:

> TD conducts an automated review of Secured Credit Card Accounts to determine eligibility for graduation to an unsecured credit card account. Graduation will depend on, among other things, how you use your Credit Card Account, whether you have established a responsible payment history on the Credit Card Account, and whether you have responsibly managed your other credit with TD Bank and/or other creditors.

> If we determine that you satisfy the criteria for graduation, we will notify you and graduate the account. You need not take any action. Upon graduation, we will unlock your Collateral Account so that you are permitted to access and use the security deposit funds in that account. Also, upon graduation, if less than a year has passed since you paid your last annual fee on the Secured Credit Card Account, we will refund a prorated amount of that annual fee according to the number of cycles left in the year following that annual fee. The refund will appear on a subsequent monthly statement. Your credit limit and your APR will remain the same. All other terms and conditions will also remain the same.

*See* Joint Decl., ¶ 32. Although this change in disclosures was not a negotiated part of this Settlement Agreement, it was almost certainly a result of this litigation. *Id.*

### D. The Release Provisions.

In exchange for the consideration described above, Plaintiffs and Participating Settlement Class Members agree to release Defendant and its present and former parents, subsidiaries, divisions, affiliates and other specified related parties from any and all liabilities, rights, claims, actions, causes of action, and other specified remedies, that constitute, result from, arise out of, are based upon, or relate to any of the claims that were or could have been asserted in the Action. The full text of the releases is set forth in the Settlement Agreement. *Id.* at ¶¶ 103-07.

### E. Attorneys' Fees, Expenses, and Class Representative Service Awards.

The Parties and their counsel did not discuss the provisions regarding attorneys' fees or Class Representative service awards until after they had already agreed upon the terms of the Settlement Agreement in principle, and substantive elements of the Settlement Agreement had been negotiated. Pursuant to the terms of the Settlement Agreement, Class Counsel submitted a

Fee and Expense Application to the Court. *See* ECF No. 75, p. 1 (requesting attorneys' fee award of $750,000, reimbursement of $13,526.93 in litigation costs and Service Awards for the Class Representatives in the total amount of $27,500).

On behalf of the five Class Representatives, Class Counsel sought Service Awards not to exceed the total amount of $27,500.00. *Id.* at 17-18. The original Class Representative, Natalie Campagna, is proposed to receive $7,500, while each of the other four Class Representatives is proposed to receive $5,000. *Id.* The parties agree that the Court's failure to approve, in whole or in part, any award for attorneys' fees or Service Awards shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination. *Id.*

## II.   NOTIFICATION TO THE CLASS AND RESPONSE OF CLASS MEMBERS.

On August 29, 2022, the Court entered an order finding that the proposed Settlement is within the range of possible approval, provisionally certifying the Settlement Class, appointing Plaintiffs as Class Representatives, and appointing co-lead counsel as Class Counsel. *See* ECF No. 72. In that same order, the Court also set a fairness hearing for February 23, 2023, at 11:00 a.m., authorized the appointment of Epiq Systems, Inc. ("Epiq") as the Settlement Administrator, and authorized notice to the class members. *Id.*

In accordance with the Court's Preliminary Approval Order, e-mailed and mailed notice was sent to over 120,000 individuals and a Settlement Website, https://tdbanksecuredcardclassaction.com, was created to give Settlement Class members access to case-related documents such as the Second Amended Complaint, the Settlement Agreement, the Preliminary Approval Order, the Long-Form Notice, and the Motion for Attorneys' Fees and Service Awards. *See* Supplemental Declaration of Elizabeth Enlund, ¶¶ 9-10 ("Supp. Enlund Decl.") (Exhibit 1 hereto). The court-approved Notice program provided a summary of the

litigation, a summary of the proposed Settlement, and detailed information to Settlement Class Members regarding their rights and options in relation to the proposed Settlement. Class Counsel and/or Epiq have received and responded to dozens of phone calls and email inquiries from Settlement Class Members. To date, out of the entire mailing of over 120,000 notices, only three (3) individuals have requested to be excluded, and zero (0) objections have been formally filed with the Court. *Id.* at ¶¶ 14-15.

## III.    THE SETTLEMENT SATISFIES REQUIREMENTS FOR FINAL APPROVAL.

Before granting final approval, the Court should determine whether to certify the Settlement Class, and then assess whether the terms of the settlement are fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23(e). *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013) ("…in addition to determining whether a proposed settlement is 'fair, reasonable, and adequate,' district courts must ensure that each of Rule 23(a)'s requirements, including commonality, is satisfied before certifying a class and approving a class settlement agreement") (*quoting* Fed. R. Civ. P. 23(e)). The Court should also make final its determination in the Preliminary Approval Order that notice "constituted due, adequate, and sufficient notice to all persons entitled to receive notice" and that the class members received adequate notice of the settlement. Fed. R. Civ. P. 23 (c)(2)(B). As set forth below, these requirements are readily satisfied here.

### A.    The Settlement Meets the Requirements of Rule 23.

Plaintiffs seek certification of the Settlement Class pursuant to Rule 23. "For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b)." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 564 (D.N.J. 2010), *rev'd on other grounds*, *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir.

2012).  The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy.  In addition, Plaintiffs seek certification of the Settlement Class pursuant to Rule 23(b)(3), which provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).  As discussed below, these requirements are met.

### 1.    Numerosity Under Rule 23(a)(1).

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Generally, if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, the numerosity requirement of Rule 23(a) has been met."  *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001); *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity").  Here, notices were mailed to over 120,000 Settlement Class Members.  *See* Supp. Enlund Decl., ¶ 9.  Numerosity is therefore easily satisfied.

### 2.    Commonality Under Rule 23(a)(2).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "A finding of commonality does not require that all class members share identical claims, and factual differences among the claims of the putative class members do not defeat certification."  *In re Prudential Ins. Co. Sales Litig.,* 148 F.3d 283, 310 (3d Cir. 1998).  The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention," that is "of such a nature

that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.  Here, there are many common issues of fact and law, including:

- Whether TD improperly refused to consider graduation of consumers who held secured credit cards to unsecured credit cards;

- Whether TD breached the Card Agreement by using secret, undisclosed criteria that contradict the parties' contract;

- Whether TD breached the Card Agreement by failing to consider graduating consumers who held secured credit cards to unsecured credit cards after their seventh consecutive billing cycle in good standing;

- Whether TD engaged in unfair and/or deceptive trade practices in violation of Delaware, New York, New Jersey, or Connecticut law through the trade practices alleged herein; and/or

- Whether Plaintiffs and other members of the Classes have been damaged as a result of TD's alleged wrongful business practices described herein.

These common issues satisfy Rule 23(a)(2)'s commonality requirement.

### 3.    Typicality Under Rule 23(a)(3).

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members.  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is satisfied as long as the named plaintiffs and the class "point to the same broad course of alleged fraudulent conduct to support a claim for relief."  *Zinberg*, 138 F.R.D. at 401.  "If the named plaintiffs and class members involve the same conduct by the defendant, typicality is established."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 183-84 (3d Cir. 2001).  Factual differences between class representatives and other members of the class do not preclude a finding of typicality, so long as the plaintiffs' claims arise from the same event or course of

conduct and are based on the same legal theories. *Danvers Motor Co., Inc. v. Ford Motor Co*., 543 F.3d 141, 150 (3rd Cir. 2008).

Plaintiffs' claims are typical of claims of all of the members of the Settlement Class, all of whom were holders of a TD Cash Secured Credit Card during the applicable time period that maintained their account for seven consecutive billing cycles without committing an act of default, and were not graduated to an unsecured credit card in the cycle following that seven-month period. Plaintiffs' claims arise from the same course of events that each class member was subjected to, and this same conduct caused the same injury to all of the Settlement Class Members. This requirement is, therefore, met.

### 4. Adequacy of Representation Under Rule 23(a)(4).

Rule 23(a)(4) is also met because the named plaintiffs will fairly and adequately protect the interests of the class. Adequacy "is satisfied by showing that (1) Class Counsel is competent and qualified to conduct the litigation; and (2) [C]lass [R]epresentatives have no conflicts of interest." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007). Here, the adequacy requirement is plainly met. In assessing the second requirement, district courts examine whether the class representative "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l., Inc*., 2006 U.S. Dist. LEXIS 23393, at *15 (E.D. Pa. Apr. 26, 2006).

Here, Plaintiffs are represented by experienced counsel who has litigated this case vigorously on behalf of the Settlement Class. *See* Joint Decl., ¶¶ 55-56. Indeed, the firms representing Plaintiffs have extensive general experience prosecuting consumer class actions, and extensive specific experience litigating consumer class actions against TD. *Id*. Class

Counsel has spent almost three years litigating this action. *Id.* at ¶ 11.

Second, no conflict exists between the named and unnamed class members because their interests are plainly aligned. Plaintiffs and the Settlement Class Members have all been injured by the same conduct. Plaintiffs do not have any interests antagonistic to those of the other Settlement Class Members and all Settlement Class Members share a strong interest in proving defendant's liability. Finally, Class Representatives have been actively protecting the interests of the Settlement Class. They have engaged in the prosecution of this matter since its inception, having consistently conferred with Class Counsel, reviewed the various versions of the complaints in the Action, reviewed and signed their interrogatory responses, provided documents and consulted with counsel regarding the propriety of the Settlement. *See* ECF No. 75, pp. 17-18. As a result, the adequacy requirement is satisfied.

### 5.    The Requirements of Rule 23(b)(3) Are Met.

Rule 23(b)(3) is satisfied when: (1) the questions of law or fact common to the class predominate over any questions affecting only individual class members ("predominance"); and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3); *Anchem Products, Inc., v. Windsor*, 521 U.S. 591, 615 (1997). Both of these requirements are met here.

### (a)    Predominance Exists.

The predominance standard requires the Court to "determine whether the common legal and factual issues are more significant than the non-common issues such that the class is 'sufficiently cohesive to warrant adjudication by representation.'" *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J. 2003) (quoting *Amchem*, 521 U.S. at 623). "'[I]n general, predominance is met when there exists generalized evidence which proves or disproves an

element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' [sic] individual position.'" *In re Bulk (Extruded) Graphite Products Antitrust Litig.*, 2006 WL 891362, at *9 (D.N.J. April 4, 2006) (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)).  Predominance does not require that every relevant issue before the Court be postured identically for each and every proposed class member. *Anchem*, 521 U.S. at 623; *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 484 (W.D. Pa. 1999).

To determine whether common issues will predominate, the underlying elements of the substantive claim must be identified.  Here, Defendant's liability turns on, among other things, whether its failure to graduate cardholders to unsecured credit cards following seven consecutive billing cycles without committing an act of default violates the parties' contract.  Every Settlement Class Member's claims may be proven by the same set of facts.  Moreover, determining whether and to what extent Settlement Class Members were injured turns on common proof.  Regardless, when common questions of law or fact predominate regarding liability, "the existence of individual questions as to damages is generally unimportant." *Guzman v. VLM, Inc.*, 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2, 2008).  Each element presents issues that are sufficiently cohesive and common to warrant adjudication by representation. Moreover, because this case has settled, the Court need not "consider the available evidence and the method or methods by which plaintiffs would use the evidence to prove the disputed element at trial[,]" because there will be no trial.  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 306 (3d Cir. 2011) (internal quotation marks and citation omitted). As a result, the predominance element is satisfied.

**(b)    Superiority Exists.**

The superiority prong asks whether "a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule expressly sets forth a list of relevant factors: class members' interest in bringing individual actions; the extent of existing litigation by class members; the desirability of concentrating the litigation in one forum; and potential issues with managing a class action. Fed. R. Civ. P. 23(b)(3)(A-D).

First, no members of the class expressed interest in bringing individual actions other than Plaintiffs here. Second, it is well settled that a class action is the superior method of adjudication where, as here, "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue . . . [and] there is reason to believe that class members may lack familiarity with the legal system, discouraging them from pursuing individual claims." *Jankowski v. Castaldi*, 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006). A class action would be the only practical way of resolving the claims of the class members here, while at the same time, avoiding the potential for repetitious litigation and inconsistent adjudications if the claims were pursued individually. In light of the fact that each class member has a relatively small damage claim, combined with the fact that consumer class actions like this one are particularly expensive, complicated, and lengthy, this is not surprising. *See, e.g.*, *Graphite Prods.*, 2006 WL 891362, at *16 ("the relatively small purchase price of bulk extruded graphite parts would likely preclude litigating this action outside a class action"); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30") (emphasis omitted). Third, a multiple individual litigations create the potential for inconsistent or contradictory judgments. Fourth, a class action presents fewer management problems and provides the benefits of single adjudication,

economies of scale, and comprehensive supervision by a single court.  Because the case has settled, no manageability issues will arise.  *Sullivan*, 667 F.3d at 306.  Certification of the settlement class will allow for efficient resolution of claims that would likely not be brought owing to prohibitive legal expenses, while at the same time preserving scarce judicial resources. Without the class action vehicle, the class would have no reasonable remedy, and Defendant would be permitted to retain the proceeds of its alleged unlawful conduct.  Accordingly, a class action is the best available method for the efficient adjudication of this litigation.

**B.    The Settlement is Fair, Reasonable, and Adequate.**

The Third Circuit has recently reiterated that "[t]he approval of a class action settlement is governed by Rule 23(e)(2), which specifically requires that a district court approve a settlement agreement only 'after a hearing and on finding that it is fair, reasonable, and adequate.'"  *In re NFL Players Concussion Injury Litig*., 775 F.3d 570, 581 (3d Cir. 2014) (*quoting* Fed. R. Civ. P. 23(e)(2)). This Court has stated that "'the Court is required to 'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.'"  *In re Philips/Magnavox TV Litig*., 2012 U.S. Dist. LEXIS 67287, at *22 (D.N.J. May 14, 2012) (*quoting In re Cendant Corp. Litig*., 264 F.3d 201, 231 (3d Cir. 2001)).  The Court must also "direct notice in a reasonable manner to all class members who would be bound by the proposal."  *See* Fed. R. Civ. P. 23(e)(1).

The Third Circuit has directed the district courts to consider the following non-exhaustive list of "*Girsh* factors" in deciding whether to approve a proposed class action settlement:

> (1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action

through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery. . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

*In re Prudential*, 148 F.3d 283 at 317 (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).  These factors squarely support the settlement.

### 1.    The Complexity, Expense and Likely Duration of the Litigation Favors Approval.

The first factor assesses "the probable costs, in both time and money, of continued litigation."  *Cendant*, 264 F.3d at 233.  Courts have consistently held that "[t]he expense and possible duration of the litigation [should] be considered in evaluating the reasonableness of [a] settlement."  *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *Bullock v. Administrator of Kircher's Estate*, 84 F.R.D. 1, 10-11 (D.N.J. 1979) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation").

This case has been vigorously litigated since April 2020.  Without the Settlement, the parties and the Court would still be mired in this complex litigation for the foreseeable future.  The relief requested in this Action included monetary damages and injunctive relief.  The Settlement Agreement secures substantial monetary benefits for the settlement class with none of the delay, risk and uncertainty of continued litigation.  Thus, this first *Girsh* factor, standing alone, strongly favors approval of the Settlement.

### 2.    The Reaction of the Class to the Settlement Favors Approval.

The second factor "attempts to gauge whether members of the class support the settlement," *In rePrudential*, 148 F.3d at 318, with such support "creat[ing] a strong presumption . . . in favor of the Settlement."  *Cendant*, 264 F.3d at 235.  As discussed below, this factor strongly supports approval of the settlement.

The deadline by which Settlement Class Members could object to or exclude themselves from the Settlement was January 27, 2023.  ECF No. 72, pp. 6-7.  To date, *zero* (0) Settlement Class Members filed an objection and only three (3) class members, or 0.000025%, have elected to opt out.  *See* Supp. Enlund Decl., ¶¶ 14-15.

Zero objectors and the three exclusions out of over 120,000 Settlement Class Members represent a miniscule percentage of the Settlement Class.  This Court has noted that such a response is indicative of the fairness of the settlement, and provides further proof that it should be approved.

> These numbers amount to miniscule fractions of the Settlement Class (approximately .0005% [opt-outs] and .0001% [objections], respectively).  The paucity of negative feedback in the face of an extensive notice plan leads the Court to conclude that the Settlement Class generally and overwhelmingly approves of the Settlement.

*In re Ins. Brokerage Antitrust Litig.*, 2012 U.S. Dist. LEXIS 46496, at *69 (D.N.J. Mar. 30, 2012) (noting that a "small number of objections by Class Members to the Settlement weighs in favor of approval"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (finding a similarly low level of objection to be a "rare phenomenon" weighing in favor of approval).

### 3.    The Stage of the Proceedings and the Discovery Completed Favor Approval.

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Cendant*, 264 F.3d at 235.  Unsurprisingly, "post-discovery settlements are more likely to reflect the true value of the claim and be fair."  *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993).

Here, Class Counsel undertook discovery that allowed it to be fully informed on the material issues before negotiating a settlement on behalf of the settlement class.  The parties

exchanged thousands of pages of records, and responded to interrogatories and requests for production of documents. *See* Joint Decl., ¶ 24. In addition, the parties undertook a significant amount of data analysis in preparation for mediation with Judge Rosen.

When the "negotiation process follows meaningful discovery, the maturity and correctness of the settlement becomes all the more apparent." *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 400 (D.N.J. 2006). Here, the Settlement Agreement was reached through arm's length negotiation between highly experienced counsel only after very significant discovery was undertaken. Accordingly, the third *Girsh* factor strongly favors approval of the settlement.

### 4. The Risk of Failing to Establish Liability and Damages Favors Approval.

In negotiating and reaching the Settlement Agreement, Class Counsel accounted for the difficulties and potential risks associated with proving liability and damages. *See, i.e. In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287, at *32-33. Throughout the litigation, TD has argued that, *inter alia*, that it did not breach the contract and that this case is not appropriate for class certification. While Plaintiffs disagree with Defendant's arguments and have vigorously litigated against them, the arguments pose a real risk to recovery. In short, continued litigation presents additional risks, delays, and expenses that include, but are not limited to, those attendant with certifying a nationwide litigation class, defeating summary judgment and pretrial motions, prevailing at trial, defending such result on appeal, not to mention the countless other uncertainties inherent in litigation, particularly in the context of a large and complex class action.

To that end, in assessing the Settlement Agreement, the Court should balance the benefits potentially afforded to the Settlement Class as a result of the settlement, against the risks of

continued litigation.  *See In re Prudential*, 148 F.3d at 317 (noting how "settlement provide[s] class members the opportunity to file claims immediately after court approval of the settlement, rather than waiting through what no doubt would be protracted litigation"); *Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 707 (D. Colo. 2007) (recognizing that "any class action presents complex and difficult legal and logistical issues which require substantial expertise and resources").  In light of the risks, the fourth and fifth *Girsh* factors support approval of the Settlement Agreement.

> ### 5. The Risks of Maintaining the Class Action Through Trial, and the Ability of TD to Withstand A Greater Judgment Favor Approval.

The sixth and seventh *Girsh* factors also favor approval of the settlement.  Although Plaintiffs believe that their claims are well-suited for treatment on a class-wide basis, TD would have argued that certification was inappropriate because individual issues predominate over common issues.

There is currently no evidence indicating that TD would not be able to withstand a more significant judgment.  However, this factor is not dispositive.  *See In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287, at *35 ("Plaintiffs acknowledge that there is currently no indication that Defendant here would be unable to withstand a more significant judgment. Nevertheless, the Court is satisfied that the Settlement is fair, reasonable, and adequate, despite the possibility that Philips could pay a greater sum") (internal citations omitted).  Here, the settlement is well within the range of reasonableness and provides substantial benefits to the class.  Accordingly, both the sixth and seventh *Girsh* factors favor approval of the settlement.

> ### 6. The Range of Reasonableness of the Settlement to a Possible Recovery in Light of All the Attendant Risks of Litigation Favors Approval.

The eighth and ninth *Girsh* factors also support approval of the settlement.  The determination of a "reasonable" settlement is not susceptible to a simple mathematical equation

yielding a particularized sum.  Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  Here, the $2.25 million settlement fund is a significant amount of money given the challenges facing the action. In addition, the cash payments contemplated by the Settlement Agreement are designed to compensate Participating Settlement Class Members for a portion of the annual fee each paid for the TD Cash Secured Credit Card, as well as, should the amount of the Net Settlement Fund suffice, additional payments based on how long Participating Settlement Class Members were in their secured card accounts after the date Plaintiffs allege they should have graduated.  These cash payments will automatically be made to all Settlement Class Members after receiving approved notice of the Settlement Agreement without having to file a claim.

Accordingly, given the size of the settlement class, the potential benefits available, and the aforementioned risks in proving liability and damages and in obtaining class certification, the settlement fairly and adequately rewards the Settlement Class.

### C.    The Notice Provided to the Class Satisfies Due Process.

In accordance with the Court's Preliminary Approval Order, Settlement Administrator Epiq sent the Court-approved notice by email and U.S. mail to 124,465 unique Settlement Class Members.  *See* Supp. Enlund Decl., ¶ 9.  Epiq also established and monitored the required toll-free telephone number (1-844-245-3767) and settlement website (https://tdbanksecuredcardclassaction.com).  *Id.* at ¶¶ 10-11.  Through February 13, 2023, the settlement website statistics show 3,610 unique visitors and 7,448 page views.  *Id*. at ¶ 10. Additionally, as of the same date, the toll-free number has received 736 calls, totaling 2,970 minutes.  *Id.*  Callers have the option of requesting that a long-form notice be sent to them via USPS First-Class Mail.  *Id.* at ¶ 12.  As of February 13, 2023, 103 long-form notices have been

requested and sent. *Id.* Accordingly, Settlement Class Members have been (i) provided with direct notice of the Settlement Agreement; (ii) fully informed of their rights and obligations under the Settlement Agreement; and (iii) provided with the resources to ask questions and, to the extent necessary, receive assistance in participating in the settlement.

This notice program meets the due process requirements of Fed. R. Civ. P. 23, which calls for "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (emphasis omitted); *In re Ikon Office Solutions, Inc*., 194 F.R.D. 166, 174 (E.D. Pa. 2000) ("In order to satisfy due process, notice to class members must be 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'") (*quoting Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)). Class Counsel look forward to the Final Approval Hearing on February 23, 2023 to answer any specific questions the Court has regarding the successful notice plan accomplished in this case, as well as any questions about the settlement.

## CONCLUSION

For the foregoing reasons, Class Representatives and Class Counsel respectfully request that this Court certify the Settlement Class, find the Settlement to be fair, reasonable and adequate, issue final approval of the settlement, and dismiss this action with prejudice.

DATED this 16th day February, 2023.

                                    Respectfully submitted,

BY:    GOLOMB SPIRT GRUNFELD, P.C.

/s/

Kenneth J. Grunfeld, Esquire
 New Jersey Bar No.: 026091999
1835 Market Street
Suite 2900
Philadelphia, PA 19103
(215) 985-9177
kgrunfeld@golomblegal.com

E. Adam Webb
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-0773
Adam@WebbLLC.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 16, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

*/s/*_____

Kenneth J. Grunfeld

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| NATALIE CAMPAGNA, GLORIA DEVAULT, AMANDA FARMER, PHILIP PAGLIARO, and YAAKOV ROZINER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TD BANK, N.A., <br><br> Defendant. | Case No. 1:20-cv-18533-KMW-SAK |

**SUPPLEMENTAL DECLARATION OF ELIZABETH ENLUND REGARDING**
**IMPLEMENTATION OF NOTICE AND ADMINISTRATION**

I, Elizabeth Enlund, hereby declare and state as follows:

1.      I am a Senior Settlement Project Manager employed by Epiq Class Action & Claims Solutions, Inc. ("Epiq").  I am a certified Project Management Professional (PMP)® and hold a Bachelor of Science degree from Portland State University.  Prior to joining Epiq in 2019, I managed a variety of complex projects in highly regulated environments through the government and private sectors.

2.      On December 23, 2022, I executed a declaration in the above-captioned action describing the implementation of the Notice Program as of December 22, 2022.[1]  *See* Declaration of Elizabeth Enlund Regarding Implementation of Notice and Administration (the "First Declaration of Elizabeth Enlund") (Dkt. 75 Ex. 2).

---

[1] All capitalized terms not otherwise defined in this declaration shall have the same meanings ascribed to them in the Settlement Agreement and Release (Dkt. 71-2), dated July 25, 2022.

SUPPLEMENTAL DECLARATION OF ELIZABETH ENLUND REGARDING IMPLEMENTATION OF
NOTICE AND ADMINISTRATION

3.     This declaration provides an update regarding implementation of the Notice Program and an accounting of exclusions ("opt outs") from and objections to the Settlement as of February 13, 2023.

4.     The statements of fact in this declaration are based on my personal knowledge and information provided to me by my colleagues in the ordinary course of business, and if called on to do so, I could and would testify competently thereto.

## DISSEMINATION OF NOTICE

5.     As further described in the First Declaration of Elizabeth Enlund, between November 28, 2022 and December 2, 2022, Epiq successfully sent E-Mail Notice to 73,208 Settlement Class Members for whom an e-mail address was included in the Class List.

6.     As further described in the First Declaration of Elizabeth Enlund, on November 28, 2022, Epiq sent Mail Notice to 36,796 Settlement Class Members via USPS First-Class Mail for those on the Class List for whom TD Bank did not have, and thus did not provide, an e-mail address and who had a facially valid mailing address.

7.     On December 16, 2022, Epiq sent Mail Notice to each of the 14,469 unique Settlement Class Members whose e-mail was undeliverable in the E-Mail Notice campaign, or who did not have a valid e-mail address on file, and who had a valid mailing address on file.

8.     As of February 13, 2023, 119 Mail Notices have been reported or returned by USPS as undeliverable.  As a result of skip trace searches performed by Epiq using a third-party lookup service, a total of 1,570 addresses were updated and 1,691 Mail Notices were re-mailed to the updated addresses.

9.      As of February 13, 2023, Epiq has emailed or mailed Notice to 124,465 Settlement Class Members, with Notice to 1,172 unique Settlement Class Members currently known to be undeliverable, which is a 99.1% deliverable rate to the Class.

## SETTLEMENT WEBSITE

10.     As further described in the First Declaration of Elizabeth Enlund, on September 28, 2022, Epiq launched a website, www.TDBankSecuredCardClassAction.com, that potential Settlement Class Members can visit to obtain additional information about the proposed Settlement, view important documents, and confirm their mailing address. As of February 13, 2023, the Settlement Website has received 3,610 unique visitors and 7,448 website pages have been viewed.

## TOLL-FREE INFORMATION LINE

11.     As further described in the First Declaration of Elizabeth Enlund, since September 28, 2022, Epiq has maintained a toll-free interactive Voice Response Unit ("VRU") telephone number to provide information and accommodate inquiries from Settlement Class Members. As of February 13, 2023, the toll-free number has received 736 calls, for a total of 2,970 minutes.

12.     Callers have the option of requesting that a Long-Form Notice be sent to them via USPS First-Class Mail. As a result of these requests, as of February 13, 2023, 103 Long Form Notices have been sent via USPS First-Class Mail.

## E-MAIL INBOX

13.     Epiq    established    and    maintains    an    e-mail    inbox, Info@TDBankSecuredCardClassAction.com, for Settlement Class Members to ask questions regarding the Settlement. As of February 13, 2023, Epiq has received a total of 112 incoming e-

mails and has responded to 108 e-mails.  The remaining e-mails were either junk mail or did not require a response.

## **REQUESTS FOR EXCLUSION**

14.    Pursuant to Section VIII of the Agreement, Settlement Class Members who wish to be excluded from the Settlement were required to mail or submit by private courier a written opt-out statement to Epiq, with a postmark date or courier shipping label date of on or before January 27, 2023.  As of February 13, 2023, Epiq received three timely and potentially valid opt-out requests.

## **OBJECTIONS RECEIVED**

15.    Pursuant to Section IX of the Agreement, Settlement Class Members who wished to object to the Settlement were required to submit written Objections to the Clerk of the Court, Class Counsel, and TD Bank's Counsel, such that they were postmarked on or before the Objection Deadline of January 27, 2023.  As of February 13, 2023, Epiq is not aware of, nor has it received, any timely written Objections to the Settlement.

I declare under penalty of perjury under the laws of the United States and the State of Arizona that the foregoing is true and correct and that this declaration was executed on February 14, 2023, in Tucson, Arizona.

_____

Elizabeth Enlund, PMP
Senior Project Manager
Epiq Class Action & Claims Solutions, Inc. ("Epiq")

SUPPLEMENTAL DECLARATION OF ELIZABETH ENLUND REGARDING IMPLEMENTATION OF NOTICE AND ADMINISTRATION